# CASES DETERMINED

### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW JERSEY.

### JUNE TERM, 1913.

---

### THE STATE v. JARVIS B. GRIFFIN.

Argued February 20, 1913—Decided June 17, 1913.

1. The keeping of a place to which persons habitually resort for gambling by playing for money with cards and dice is a violation of the sixty-fifth section of our Crimes act.
2. It is the character, and not the extent, of the punishment imposed as a penalty for the commission of crime which is struck at by the constitutional provision interdicting the infliction of cruel and unusual punishments; and the fact that the legislature provides a punishment for a given crime more severe than the courts approve affords no ground for judicial interference.
3. When a conviction in a criminal case is brought up for review under the one hundred and thirty-sixth and one hundred and thirty-seventh sections of the Criminal Procedure act, errors other than those which are alleged to have taken place at the trial of the cause cannot be taken advantage of before the appellate tribunal unless formal assignments of error which set them up are filed.

---

On error to Atlantic Oyer and Terminer.

(429)

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and KALISCH.

For the plaintiff in error, *Bolte & Sooy.*

For the defendant in error, *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The defendant was indicted for and convicted of a violation of the sixty-fifth section of the Crimes act. That section provided as follows: "Any person or corporation that shall habitually, or otherwise, buy or sell what is commonly known as a pool or any interest or share in any such pool, or shall make or take what is commonly known as a book upon the running, pacing or trotting, either within or without this state, of any horse, mare or gelding, or shall conduct the practice commonly known as bookmaking and pool selling, or either of them, or shall keep a place to which persons may resort for engaging in such practices, or either of them, or for betting upon the event of any horse race, or other race or contest, either within or without this state, or for gambling in any form, or aiding and abetting or assisting therein, shall be guilty of a misdemeanor, and punished by a fine of not less than $1,000, nor more than $5,000, and be imprisoned in the state prison for not less than one year, nor more than five years."

The specific violation of this statute charged against the defendant in the indictment was that he did unlawfully and habitually keep a place to which persons might and did resort for gambling by playing for money at and with cards and dice, with intent that said persons might resort thither for gambling by playing for money at and with cards and dice.

The principal ground upon which we are asked to set this conviction aside is that the statutory provision referred to was intended to enforce the constitutional amendment abolishing horse racing and pool selling, and was not intended to embrace places where ordinary gambling at cards and dice was carried

on—that is, that it was not intended to take these places out of the ordinary class known as disorderly houses, and impose a much more severe penalty upon the keepers of such houses than had theretofore been provided against such violators of the law. We think this question is no longer an open one in this court. In the case of *State* v. *Flynn, 47 Vroom* 473, the defendant was indicted under this section, the specific charge against him being that he did aid, abet or assist one C. W. in keeping at his hotel on Ferry street, in the township of East Brunswick, a place to which persons might resort for gambling in a certain form, namely, upon a slot machine, in this, that the said Flynn did furnish, lease or loan to the said C. W. the said slot machine so used or to be used for gambling by persons upon said premises as aforesaid against the form of the statute, &c. A conviction being had upon this indictment the case came before this court for review, and the judgment was affirmed. Subsequently, it went to the Court of Errors and Appeals and was there reversed, because the indictment charged the defendant with "aiding, abetting *or* assisting," instead of "aiding, abetting *and* assisting," using the disjunctive rather than the conjunctive in the same count. It was conceded by counsel in that case in their argument before the Court of Errors and Appeals that the sixty-fifth section of the Crimes act made it a misdemeanor to keep a place to which persons might resort for gambling in any form. The Supreme Court, by affirming the conviction, necessarily must have held what the Court of Errors and Appeals said was conceded by counsel when the case was before it for review, for had the statute not covered the offence set up in the indictment a reversal would necessarily have followed. As the ground upon which the Court of Errors and Appeals reversed the judgment of the lower court was one which did not involve the question of the applicability of the statute to the case before it (that being conceded), the judgment of the Supreme Court upon that point stands unreversed.

It is further argued that the judgment should be reversed because the indictment charges that the defendant kept a

place to which persons might and did resort for gambling, and so forth, with intent that said persons "might" resort thither for gambling, and so forth, whereas, as counsel says, the indictment should have charged that he kept a place with intent that persons "should" resort, and so forth. Why counsel considers the word suggested by him preferable to that used in the indictment he does not explain. Nor is it necessary that he should; for no such objection was made to the trial court, and, consequently, it is not now properly before us for consideration.

Counsel further contends that the sixty-fifth section of the Crimes act is unconstitutional because it provides a cruel and unusual punishment. He contents himself merely with the assertion, making no attempt to show us that it rests on any solid foundation. He can hardly mean that punishment by fine and imprisonment for the commission of a crime is either cruel or unusual within the meaning of the constitution, for almost every violation of the criminal law may be so punished under our criminal code except treason and murder in the first degree, and in fact is a kind of punishment common in all civilized countries. If he means that the amount of the fine or the length of the term of imprisonment makes the punishment cruel and unusual, the answer is that the power to declare what shall and what shall not be deemed to be a crime, to determine the maximum and minimum of the fine or of the term of imprisonment to be imposed as a punishment for a crime so declared, is one which is committed by the people of the state to the legislative, and not the judicial, branch of the government. The fact that the legislature provides a punishment for a given crime more severe than the courts approve affords no ground for judicial interference; for such interference would be nothing more nor less than an attempted usurpation of legislative power by the judiciary. It is the *character* and not the *extent* of the punishment inflicted as a penalty for the commission of crime which is struck at by the constitutional provision appealed to. *State* v. *Gedicke*, 4 *N. J. L. J.* 53.

Counsel further contends that the conviction should be set aside because in the sentence pronounced upon the defendant the court failed to state for what particular crime he was being sentenced. The supplement to the Criminal Procedure act, passed in 1911, and commonly known as the Indeterminate Sentence act, provides that every sentence "shall specify the exact name of the crime for the conviction of which sentence is imposed," and it is said that this was not done by the Atlantic Oyer in the case of the defendant. Assuming the criticism upon the form of the sentence to be well founded, the error cannot now be taken advantage of by the defendant. The case comes up for review under the one hundred and thirty-sixth and one hundred and thirty-seventh sections of the Criminal Procedure act. The only "causes for reversal" which are permitted by these sections of the act are errors in the admission or rejection of testimony, or in the charge of the court, or in the denial of any matter by the court which was a matter of discretion. Errors other than these can only be taken advantage of by assignments of error, and in the present case there is no assignment directed at the erroneous form of the sentence. It is only referred to, and sought to be taken advantage of, in the "supplemental causes for reversal."

It may be added that a reversal for this reason would be merely formal, for the one hundred and forty-fourth section of the Criminal Procedure act provides that whenever a final judgment in any criminal case shall be reversed upon a writ of error on account of error in the sentence, the court in which such reversal was had may render such judgment therein as should have been rendered, or may remand the case for that purpose to the court before which the conviction was had.

The judgment under review will be affirmed.