STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES JACKSON BELL ET AL., PLAINTIFFS IN ERROR.

Submitted January 31, 1936—Decided January 5, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices LLOYD and DONGES.

For the plaintiffs in error, *Albert J. Shea* and *John W. Ockfora.*

For the defendant in error, *Arthur C. Dunn.*

PER CURIAM.

Plaintiffs in error were convicted at the Passaic County Quarter Sessions upon an indictment under what may be called the Gangster act. Chapter 155, *Pamph. L.* 1934; *N. J. Stat. Annual* 1934, § 52-43r (14), (15). The indictment contained two counts, one under section 3 of the act and the other under section 4. The first count under section 3 was dismissed with the consent of the state's attorney.

The first section of this act declares a gangster to be an enemy of the state. The second section, with certain exceptions, declares any person having possession of a machine gun is a gangster. The third section pertains to convicted persons apprehended while carrying a deadly weapon without a permit. The fourth section, under which the convictions were had, is as follows:

"4. Any person, not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other state, is· declared to be a gangster; provided, however, that nothing in this section contained shall in any wise be construed to include any participant or sympathizer in any labor dispute."

The state offered evidence to prove that the plaintiffs in error were arrested while occupying, along with four other men, a small house in Wayne township, Passaic county. The place was raided by the state police, detectives from the office of the county prosecutor, as well as police officers from New York and from the local township. The raid occurred on Sunday morning at five-thirty o'clock on June 23d, 1935. A search of the premises uncovered several loaded revolvers, a loaded rifle, a gas riot gun and its accompanying equipment, a handbag containing two German Luger pistols, loaded, and a supply of ammunition. Some of these weapons were recognized as having been stolen, one from an officer of Cumberland county, and one from a salesman of police equipment in West New York. There were two automobiles outside the house, one carrying stolen license plates. Records of criminal convictions in New York were offered and received in evidence.

We are of the opinion that there was ample evidence to support the conclusion that the plaintiffs in error were persons not engaged in any lawful occupation, that they were members of a gang consisting of two or more persons, and that each of them had been convicted of crime.

We are also of the opinion that there was no error in the admission of the evidence complained of, namely, the revolvers, bullets, masks, and other equipment taken in the raid when the plaintiffs in error were taken into custody. These exhibits were proper to show the character of the association of the persons in the house and were material in the effort to show the existence of a gang of two or more persons to which plaintiffs in error belonged.

The remaining point is that the section of the statute under which the convictions were had is unconstitutional. The

assignment of error complains that the statute is violative of the fifth amendment to the United States constitution in that it deprives plaintiffs in error of due process of law; of the fourteenth amendment to that constitution in that it deprives them of the equal protection of the law; and of article 1, section 15, of the constitution of New Jersey, in that it provides cruel and unusual punishment.

We are of the opinion that the section of the statute in question is a valid exercise of the legislative function. In the case of *Levine* v. *State*, 110 *N. J. L.* 467; 166 *Atl. Rep.* 300, the Court of Errors and Appeals passed upon the section of the Disorderly Persons act which provides for the arrest and punishment of "all runaway servants or apprentices, and all vagrants or vagabonds, common drunkards, common thieves, burglars or pickpockets, common night-walkers, and common prostitutes * * *." The act was held to be valid. Mr. Justice Heher said: "The manifest purpose of this legislation is to check evil in its beginning and thus to insure the public safety. The statute is not arbitrary or unreasonable. It provides for the apprehension and punishment of a class that menaces the security of persons and property." And further: "It is the undoubted function of the state to apprehend those who would violate laws ordained to protect the person and property of citizens, and who are seeking the opportunity to do so. Such persons are determined and ever active foes of society. They are potential actors in crimes of the first magnitude. To challenge the power of the state to prevent the commission of such crimes by legislation of this character, is to challenge its power to denounce and punish the crime itself."

This reasoning aptly fits the statute now under consideration and the circumstances under which the plaintiffs in error were found. To hold that the state was powerless to apprehend and punish a gang of convicted criminals who had virtually barricaded themselves in a house, with a veritable arsenal and other implements of crime at their fingertips, equipped with cars with stolen license plates, would be to unreasonably hamper the enforcement of law, and the protection of society. The act does not deprive plaintiffs in error of due process of law.

Nor does it deprive them of the equal protection of law. It is within the province of the legislature to classify persons with respect to the criminal law, provided the classification is a reasonable one. In *Patsone* v. *Pennsylvania,* 232 *U. S.* 138; 58 *L. Ed.* 539, in upholding a statute prohibiting the killing of game by unnaturalized foreign-born persons, the United States Supreme Court said:

"The discrimination undoubtedly presents a more difficult question. But we start with the general consideration that a State may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. * * * It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named."

The act under consideration falls within this rule.

The penalty provided by the act is a fine not exceeding $10,000 or imprisonment not exceeding twenty years, or both. We do not consider that this is a cruel and unusual punishment for the offense committed. It is the character and not the extent of the punishment which is aimed at by the constitutional provision relied on. *State* v. *Griffin,* 84 *N. J. L.* 429; 87 *Atl. Rep.* 138.

The judgments under review are affirmed.