## LANZETTA ET AL. *v.* NEW JERSEY.

No. 308. Argued January 9, 1939.—Decided March 27, 1939.

*Mr. Samuel Kagle,* with whom *Messrs. George C. Klauder* and *Harry A. Mackey* were on the brief, for appellants.

*Messrs. Robert Peacock,* Assistant Attorney General of New Jersey, and *French B. Loveland,* for appellee.

452

MR. JUSTICE BUTLER delivered the opinion of the Court.

By this appeal we are called on to decide whether, by reason of vagueness and uncertainty, a recent enactment of New Jersey, § 4, c. 155, Laws 1934, is repugnant to the due process clause of the Fourteenth Amendment. It is as follows: "Any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime in this or in any other State, is declared to be a gangster . . ."[1] Every violation is punishable by fine not exceeding $10,000 or imprisonment not exceeding 20 years, or both. § 5.

In the court of quarter sessions of Cape May County, appellants were accused of violating the quoted clause. The indictment charges that on four days, June 12, 16, 19, and 24, 1936 "they, and each of them, not being engaged in any lawful occupation; they, and all of them, known to be members of a gang, consisting of two or more persons, and they, and each of them, having been convicted of a crime in the State of Pennsylvania, are hereby declared to be gangsters." There was a trial, verdict of guilty, and judgment of conviction on which each was sentenced to be imprisoned in the state prison for not more than ten years and not less than five years, at hard labor. On the authority of its recent decision in State v. Bell, 188 A. 737; 15 N. J. Misc. 109, the supreme court entered judgment affirming the conviction. 118 N. J. L. 212; 192 A. 89. The court of errors and appeals affirmed, 120 N. J. L. 189; 197 A. 360, on the authority of its deci-

---

[1] The section continues: "provided, however, that nothing in this section contained shall in any wise be construed to include any participant or sympathizer in any labor dispute." The proviso is not here involved.

sion, *State* v. *Gaynor*, 119 N. J. L. 582; 198 A. 837, affirming *State* v. *Bell*.

If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. Cf. *United States* v. *Reese*, 92 U. S. 214, 221; *Czarra* v. *Board of Medical Supervisors*, 25 App. D. C. 443, 453. It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression. See *Stromberg* v. *California*, 283 U. S. 359, 368; *Lovell* v. *Griffin*, 303 U. S. 444. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.[2] The applicable rule is stated in *Connally* v. *General Construction Co.*, 269 U. S. 385, 391: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."

The phrase "consisting of two or more persons" is all that purports to define "gang." The meanings of that

---

[2] *Champlin Rfg. Co.* v. *Commission*, 286 U. S. 210, 242, 243. *Cline* v. *Frink Dairy Co.*, 274 U. S. 445, 458. *Connally* v. *General Construction Co.*, 269 U. S. 385, 391–393. *Small Co.* v. *American Sugar Rfg. Co.*, 267 U. S. 233, 239. *United States* v. *Cohen Grocery Co.*, 255 U. S. 81, 89–92. *Collins* v. *Kentucky*, 234 U. S. 634, 638. *International Harvester Co.* v. *Kentucky*, 234 U. S. 216, 221–223. Cf. *People* v. *Belcastro*, 356 Ill. 144; 190 N. E. 301. *People* v. *Licavoli*, 264 Mich. 643; 250 N. W. 520.

word indicated in dictionaries and in historical and sociological writings are numerous and varied.[3]  Nor is the

[3] American dictionaries define the word as follows:

Webster's New International Dictionary (2d ed.): "gang . . . Act, manner, or means of going; passage, course, or journey . . . A set or full complement of any articles; an outfit.  A number going in or forming a company; as, a *gang* of sailors; a *gang* of elk.  Specif.: . . . A group of persons associated under the same direction; as a *gang* of pavers; a *gang* of slaves . . . A company of persons acting together for some purpose; usually criminal, or at least not good or respectable; as, a political *gang;* a *gang* of roughs. . . ."

Funk & Wagnalls New Standard Dictionary (1915): "gang . . . A company or band of persons, or sometimes of animals, going or acting together; a group or squad: sometimes implying coöperation for evil or disreputable purposes; as, a *gang* of laborers; a *gang* of burglars; he set the whole *gang* at work. . . ."

Century Dictionary and Cyclopedia (1903): "gang . . . A number going or acting in company, whether of persons or of animals: as, a gang of drovers; a gang of elks.  Specifically—(a) A number of persons associated for a particular purpose or on a particular occasion: used especially in a depreciatory or contemptuous sense or of disreputable persons: as, a gang of thieves; a chain-gang . . .  (b) A number of workmen or laborers of any kind engaged on any piece of work under supervision of one person; a squad; more particularly, a shift of men; a set of laborers working together during the same hours. . . ."

Part of the text of the definitions given by the Oxford English Dictionary (1933) reads: "gang . . .  A set of things or persons . . . A company of workmen . . . A company of slaves or prisoners . . . Any band or company of persons who go about together or act in concert (chiefly in a bad or depreciatory sense, and in mod. usage mainly associated with criminal societies) . . . *To be of a gang:* to belong to the same society, to have the same interests. . . ."

Another English dictionary, Wyld's Universal Dictionary of the English Language, defines the word as follows: "gang . . . . 1. A band, group, squad; (a) of labourers working together; (b) of slaves, prisoners &c.  2. (in bad sense) (a) A group of persons organized for evil or criminal purpose: a gang of burglars &c; (b) (colloq., in

meaning derivable from the common law,[4] for neither in that field nor anywhere in the language of the law is there definition of the word. Our attention has not been called to, and we are unable to find, any other statute attempting to make it criminal to be a member of a "gang."[5]

In *State* v. *Gaynor, supra,* the court of errors and appeals dealt with the word. It said: "Public policy ordains that a combination designed to wage war upon society shall be dispersed and its members rendered incapable of harm. This is the objective of section 4 . . . and it is therefore a valid exercise of the legislative power. . . . The evident aim of this provision was to render penal the association of criminals for the pursuit of criminal enterprises; that is the gist of the legislative expression. It cannot be gainsaid that such was within the competency of the legislature; the mere statement of the purpose carries justification of the act. . . . If society cannot impose such taint of illegality upon the confederation of convicted criminals, who have no lawful occupation, under circumstances denoting . . . the pursuit of criminal objectives, it is helpless against one of the most menacing forms of evil activity. . . . The primary function of government . . . is to render security to its subjects.

---

disparagement) a body, party, group, of persons: "I am sick of the whole gang of university wire-pullers. . . ."

See: Asbury, Herbert, *The Gangs of New York,* 1927, Alfred A. Knopf. Thrasher, Frederic M., "Gangs" in Encyclopaedia of the Social Sciences, 1931, vol. 6, p. 564, and *The Gang: A study of 1313 Gangs in Chicago,* 1927, University of Chicago Press.

[4] See, e. g., *Champlin Rfg. Co.* v. *Commission,* 286 U. S. 210, 242–243. *Connally* v. *General Const. Co.,* 269 U. S. 385, 391. *Nash* v. *United States,* 229 U. S. 373.

[5] Cf. Kans. Laws 1935, c. 161. Ill. Laws 1933, p. 489, held unconstitutional in *People* v. *Belcastro,* 356 Ill. 144; 190 N. E. 301. Mich. Comp. Laws (Mason, Supp. 1935) § 17115–167, held unconstitutional in *People* v. *Licavoli,* 264 Mich. 643; 250 N. W. 520.

And any mischief menacing that security demands a remedy commensurate with the evil."

Then undertaking to find the meaning of "gang" as used in the challenged enactment, the opinion states: "In the construction of the provision, the word is to be given a meaning consistent with the general object of the statute. In its original sense it signifies action—'to go'; in its modern usage, without qualification, it denotes—in common intent and understanding—criminal action. It is defined as 'a company of persons acting together for some purpose, usually criminal,' while the term 'gangster' is defined as 'a member of a gang of roughs, hireling criminals, thieves, or the like.' Webster's New International Dictionary (2d ed.). And the Oxford English Dictionary likewise defines the word 'gang' as 'any company of persons who go about together or act in concert [in modern use mainly for criminal purposes].' Such is plainly the legislative sense of the term."

If worded in accordance with the court's explication, the challenged provision would read as follows: "Any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons (meaning a company of persons acting together for some purpose, usually criminal, or a company of persons who go about together or who act in concert, mainly for criminal purposes), who has been convicted at least three times of being a disorderly person or who has been convicted of any crime in this or in any other State, is declared to be a gangster (meaning a member of a gang of roughs, hireling criminals, thieves, or the like)."

Appellants were convicted before the opinion in *State v. Gaynor.* It would be hard to hold that, in advance of judicial utterance upon the subject, they were bound to understand the challenged provision according to the language later used by the court. Indeed the state supreme

court (*State* v. *Bell, supra*) went on supposed analogy between "gang" and offenses denounced by the Disorderly Persons Act, Comp. Stat. Supp. 1930, § 59–1 upheld by the court of errors and appeals in *Levine* v. *State,* 110 N. J. L. 467, 470; 166 A. 330. But the court in that case found the meaning of "common burglar" there involved to be derivable from the common law.

The descriptions and illustrations used by the court to indicate the meaning of "gang" are not sufficient to constitute definition, inclusive or exclusive. The court's opinion was framed to apply the statute to the offenders and accusation in the case then under consideration; it does not purport to give any interpretation generally applicable. The state court did not find, and we cannot, that "gang" has ever been limited in meaning to a group having purpose to commit any particular offense or class of crimes, or that it has not quite frequently been used in reference to groups of two or more persons not to be suspected of criminality or of anything that is unlawful. The dictionary definitions adopted by the state court extend to persons acting together for some purpose, "usually criminal," or "mainly for criminal purposes." So defined, the purposes of those constituting some gangs may be commendable, as, for example, groups of workers engaged under leadership in any lawful undertaking. The statute does not declare every member to be a "gangster" or punishable as such. Under it, no member is a gangster or offender unless convicted of being a disorderly person or of crime as specified. It cannot be said that the court intended to give "gangster" a meaning broad enough to include anyone who had not been so convicted or to limit its meaning to the field covered by the words that it found in a dictionary, "roughs, hireling criminals, thieves, or the like." The latter interpretation would include some obviously not within the statute and would exclude some plainly covered by it.

The lack of certainty of the challenged provision is not limited to the word "gang" or to its dependent "gangster." Without resolving the serious doubts arising from the generality of the language, we assume that the clause "any person not engaged in any lawful occupation" is sufficient to identify a class to which must belong all capable of becoming gangsters within the terms of the provision. The enactment employs the expression, "known to be a member." It is ambiguous. There immediately arises the doubt whether actual or putative association is meant. If actual membership is required, that status must be established as a fact, and the word "known" would be without significance. If reputed membership is enough, there is uncertainty whether that reputation must be general or extend only to some persons. And the statute fails to indicate what constitutes membership or how one may join a "gang."

The challenged provision condemns no act or omission; the terms it employs to indicate what it purports to denounce are so vague, indefinite and uncertain that it must be condemned as repugnant to the due process clause of the Fourteenth Amendment.

*Reversed.*

MR. JUSTICE FRANKFURTER took no part in the consideration or decision of this case.