BOARD OF PHARMACY OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN ANDERSON T/A ANDERSON'S MARKET, DEFENDANT-APPELLANT.

Argued March 5, 1963—Decided May 6, 1963.

*Mr. Morton I. Greenberg* argued the cause for appellant.

*Mr. Robert B. Kroner*, Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills*, Attorney General of New Jersey, attorney).

*Messrs. Wilentz, Goldman & Spitzer* filed a brief on behalf of The New Jersey Pharmaceutical Association, *amicus curiae* (*Mr. Robert N. Wilentz,* of counsel).

*Mr. Henry F. Wolff, Jr.,* filed a brief on behalf of The Proprietary Association, *amicus curiae* (*Messrs. Brogan & Wolff,* attorneys; *Mr. James F. Hoge* and *Mr. William F. Weigel,* of the New York bar, of counsel).

The opinion of the court was delivered

PER CURIAM. Defendant appeals from a judgment imposing a statutory penalty for a sale of a medicine in violation of *N. J. S. A.* 45:14–6. We certified his appeal before argument in the Appellate Division.

Defendant is not a pharmacist. The ultimate issue is whether citrate of magnesia, bottles of which defendant retailed in his food market, is a "patent or proprietary" medicine within the meaning of *N. J. S. A.* 45:14–29, which excludes the sale of such medicines from the regulatory provisions of the statute. In *The Proprietary Ass'n v. Bd. of Pharmacy,* 16 *N. J.* 62 (1954), we declined to declare the meaning of the quoted term. We discussed the difficulty of discovering the legislative will and concluded (at *p.* 72):

"* * * Vital social issues are involved upon which the Legislature ought have full opportunity to express itself in the form of modern legislation which fixes the current policy of the State and embodies suitable definitions and enumerations. Pending such legislation the courts will, as heretofore, be obliged to deal, in particular cases involving individual items, with the antiquated statutory terminology which has been carried forth largely without change of dress. This may entail the danger that, notwithstanding sympathetic recognition of the doctrine of separation of powers, judicial rather than legislative judgment as to the controlling social interests will dominate; but on this score the Legislature concededly has the counter-balancing and readily available remedy."

As yet, the Legislature has not spoken.

We think we should go no further than to say we are not persuaded the statute was intended to regulate the sale of the commodity here involved, and hence the judgment is reversed.

FRANCIS, J. (concurring). I concur in the result decided upon, but in doing so I cannot escape a sense of unfinished business. Defendant, not being a licensed pharmacist or having such a licensed person in his food market, was charged with operating a pharmacy or drugstore in violation of R. S. 45:14–32, N. J. S. A. in that he sold a certain drug, i. e., a bottle of citrate of magnesia, to a retail customer. He points out, however, that the statute does not apply to the sale of "nonpoisonous patent or proprietary medicines," R. S. 45:14–29, N. J. S. A., and since citrate of magnesia is within the exception, he cannot be found guilty. On the other hand, the Board of Pharmacy contends that citrate of magnesia is not a nonpoisonous patent or proprietary medicine, and therefore a violation has been shown. The trial court agreed with the Board.

The statute does not define "patent or proprietary" medicine. "Poisonous" medicines or drugs or compounds are described with considerable specificity. R. S. 45:14–18 to 22, N. J. S. A. Everyone recognizes that legislation, which is penal in character, imposing substantial sanctions for violation of its mandates, must be construed strictly in favor of the alleged violator. But how can the command of the Legislature be construed or enforced if it is not actually defined, or expressed in terms which are reasonably susceptible of definition? Obviously a state cannot issue commands to its citizens in language so vague and undefined as to afford no fair warning to what conduct might transgress them. Raley v. Ohio, 360 U. S. 423, 79 S. Ct. 1257, 3 L. Ed. 2d 1344 (1959); Lanzetta v. New Jersey, 306 U. S. 451, 59 S. Ct. 618, 83 L. Ed. 888 (1939).

I do not believe vagueness of such extreme degree exists here. The judicial branch of the government is charged with the duty of interpreting and administering the statutory law in accordance with what appears reasonably to be the legislative will. We do not have the final word in this area. If, perchance, we misinterpret or overdraw the meaning, the

lawmakers will quickly invoke their undoubted right to give further expression to their intention.

It is common knowledge that pre-packaged or bottled and fully compounded drugs and medicinal preparations are sold to the public by reference to a trade or manufacturer's name. Such products are labeled with the name which is brought to public attention by advertising media, and the label or an accompanying wrapper or insert contains directions for their use and the conditions for which they are specifics. There is nothing about them which calls into use any skill or science of the person who sells them. Anyone who can read the label and make change is capable of complying with the request of the purchaser. No physician's prescription is needed. The druggist does not perform any professional function when he sells them. He is relieved of responsibility for the efficacy or safety of such products which are regulated and controlled by federal and state food and drug legislation. *Cf.* Note, "State Regulation of Drugs," 63 *Yale L. J.* 550 (1954).

Under the circumstances, in my judgment, "patent or proprietary" medicine within the contemplation of the statute in question signifies:

Any non-prescription medicine or drug which is pre-packaged, fully prepared by the manufacturer or producer for use by the consumer, and is accompanied by adequate directions for use.

Citrate of magnesia is clearly a patent or proprietary medicine within that definition. Accordingly, defendant's conviction is justifiably reversed.

FRANCIS and SCHETTINO, JJ., concurring in result.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For affirmance*—None.