Bubke, J. (dissenting in part).
While I am in agreement with the majority of the court that this defendant’s conviction on the count in the indictment charging him with conspiring with certain named others to incite riot should be affirmed, I am constrained to dissent from so much of today’s holding as affirms his conviction on the counts based on New York’s criminal anarchy statute (Penal Law, §§ 160,161).
“It is settled that a statute so vague and indefinite, in form and as interpreted, as to permit within the scope of its language the punishment of incidents fairly within the protection of the guarantee of free speech is void, on its face, as contrary to the Fourteenth Amendment.” (Winters v. New York, 333 U. S. 507, 509; emphasis added.) New York’s criminal anarchy statute is such a statute. It was authoritatively construed by this court in 1922 to permit a criminal conviction for speech without any showing that a “clear and present danger ” of harm existed. (People v. Gitlow, 234 N. Y. 132.) The court there was satisfied that mere advocacy of such doctrine was sufficient to support the imposition of criminal liability. (See People v. Gitlow, supra, pp. 138, 150-151.) This view of the State’s power to limit speech is not, of course, good law today, and the dissent of Justices Holmes and Bbakdeis in the Supreme *509 Court in the Gitlow case (268 U. S. 652, 672-673), calling for a showing of clear and present danger before speech may be outlawed, is now recognzed as representing the proper view. (See, e.g., Yates v. United States, 354 U. S. 298, 318; Dennis v. United States, 341 U. S. 494, 507, 541.) The Gitlow decision did, however, I submit, reflect that intention which the Legislature had in enacting sections 160 and 161 of the Penal Law, and I am of the opinion that the attempt by the court today to so limit the statute as to preserve it from unconstitutionality cannot, at least with respect to this defendant, cure the defect of overbroadness which inheres in this statute as written and as authoritatively construed in People v. Gitlow.
The usual rule is that once a statute has been interpreted by the courts this interpretation becomes as much a part of the enactment as if incorporated into the language of the act itself and is binding upon subsequent courts in accordance with the rules of stare decisis and the doctrine of precedent. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 72, and the cases cited therein.) Today, however, this principle is rejected on the ground that statutes are to be construed so as to preserve them from unconstitutionality, if possible (see People v. Finkelstein, 9 N Y 2d 342), a sound enough guide to construction, but only a guide, and out of place where construction is not called for, where we know from the language of a statute and from its history what it was the Legislature intended to achieve in enacting it. When, as here, we have once ascertained what the Legislature sought to do in enacting a statute (and in the case of our criminal anarchy statute we can have no real doubt that our Legislature did in fact intend to make unlawful the mere advocacy of such doctrine, with no requirement that this advocacy constitute a clear and present danger), the nature of our function demands that we adhere to our earlier interpretation of the statute. We are not an extension of the Legislature, authorized to rewrite statutes through constant ‘ ‘ reinterpretation ’ ’ designed to effectuate what we divine the Legislature would or should now desire the law to be. The court’s present invocation of a canon of construction calling for a statute to be construed so as to preserve its constitutionality, designed only to aid in resolving ambiguities, constitutes in this setting, in which no member of the court has any doubts *510 about the intent of the Legislature, the usurpation of “ a power which our democracy has lodged in its elected legislature.” (Frankfurter, Some Befleetions on the Beading of Statutes, 1947 Cardozo Lectures before the Association of the Bar of the City of New York, p. 13, 47 Col. L. Bev. 527, 533 [1947]. See, also, McKinney’s Statutes, § 73, on Judicial Legislation and the cases cited therein.)
The majority cite Dollar Co. v. Canadian Car & Foundry Co. (220 N. Y. 270) as authority for their undertaking to reinterpret sections 160 and 161 so as to preserve them from unconstitutionality. They fail, however, to mention anything at all about the nature of the statute there involved or about the nature of the alleged constitutional defects in this court’s prior decision involving that statute. There, in fact, all that was involved was a statute describing how service of process might be made on a foreign corporation, namely, by service on certain officers within this State. The statute was on its face constitutional. The only problem was that in earlier cases such service had been held sufficient to give our courts jurisdiction over foreign corporations whose officers happened to have been served here but which did not do business' in this State, with this court assuming that jurisdiction could be acquired over such corporations by the mere device of serving their officers here. (See, e.g., Pope v. Terre Haute Car & Mfg. Co., 87 N. Y. 137.) This view of the permissible limits of our exercise of jurisdiction was later seen to be unconstitutional and in Dollar the question was raised whether the statute must fall in its entirety even where there was a constitutional basis for jurisdiction. The court was apparently quite troubled by the difficulties it envisioned in upholding the statute, but under present day analysis it seems clear that this difficulty was more apparent than real, for the most that could possibly be said for the court’s earlier treatment of the statute was that it amounted to an unconstitutional application of a statute clearly constitutional on its face. In fact, it can even be argued that in the earlier cases this statute was not viewed as the basis for the exercise of jurisdiction, but only as descriptive of the manner in which service of process was to be made, assuming the courts of this State had a basis for such jurisdiction. The court’s remarking in Dollar that it “ did not read into the statute any new words *511 or affix any new, peculiar or unalterable meaning to the words which were there ” (220 N. Y., p. 277) is, in effect, recognition that there was in fact no problem of redefining legislative intent there. This, of course, is far different from what is undertaken today.
Over and above the impropriety of such judicial legislation, however, is the more serious problem of the court’s allowing an apparently moribund statute, whose previous authoritative construction would today clearly be held unconstitutional, to be invoked as a means of punishing speech. This seems clearly unconstitutional, as parties should be entitled in this favored area of conduct to rely upon a relatively stable and certain body of law. As the Supreme Court has noted: 1£ A failure of a statute limiting freedom of expression to give fair notice of what acts will be punished and such a statute’s inclusion of prohibitions against expressions, protected by the principles of the First Amendment, violates an accused’s rights under procedural due process and freedom of speech or press.” (Winters v. New York, supra, pp. 509-510; emphasis supplied.) While the decisions of the United States Supreme Court indicate that once an acceptable limiting construction has been obtained for a criminal statute affecting speech it may be applied to conduct occurring prior to that construction (see cases cited in Dombrowski v. Pfister, 380 U. S. 479, 491, n. 7), there must be afforded fair warning to defendants before such application. In Dombrowski v. Pfister (supra) the Supreme Court in this connection and with apparent approval cited Lanzetta v. New Jersey (306 U. S. 451; cited in Dombrowski v. Pfister, supra, p. 491, n. 7). In Lametta the court made clear that a penal statute, in order not to offend due process, must prescribe rules of conduct and warn against transgression. It observed that where ‘1 ‘ men of common intelligence must necessarily guess at its meaning and differ as to its application ’ ” a penal statute cannot stand (306 U. S. 451, 453). Such a statute is our criminal anarchy statute as it is presently being invoked.
Sections 160 and 161 of our Penal Law declare that the advocacy of criminal anarchy is a felony. Section 161 declares that it is punishable by imprisonment for not more than 10 years, or a fine of not more than $5,000, or both. Such a harsh penal statute directed against speech may not, I submit, remain *512 in as long suspense as to its applicability as our criminal anarchy statute did following our Gitlow decision. Procedural due process is offended by its invocation where no one, prior to today, would have been able to predict with any degree of confidence what treatment the statute would receive from the courts. In fact, its authoritative construction by this court indicated that it was unconstitutionally broad. Though it remained on our statute books, as construed originally, it was a dead letter. Its attempted revival is in my view unconstitutional.
I would modify the judgment below to the extent of reversing defendant’s conviction on the two counts in the indictment based on sections 160 and 161 of our Penal Law.
Chief Judge Fuld and Judges Van Voorhis, Bergan and Keating concur with Judge Scilbppi; Judge Burke dissents, in part, in a separate opinion and votes to modify as to two counts in the indictment; Judge Breitel taking no part.
Judgment affirmed.