Wachtler, J.
(dissenting). Under its decision in Miller v. California (413 U. S. 15) the United States Supreme Court gives this court two choices. We can declare our existing obscenity statute unconstitutional, reverse the judgments of conviction now before us, and await corrective action by the Legislature — or we can accept the Supreme Court’s invitation to authoritatively construe the standards of Miller into our present statute.
*339 With the law concerning obscenity already a hodgepodge, the course of prudence dictates that we declare the existing statute constitutionally inadequate and leave the legislative function to the Legislature. Our alternative is to fashion the Emperor’s new clothes, only to await the inevitable day we are asked to judge if the wardrobe fits. Since, in the end, the only real test of obscenity is the subjective perception of a majority of this court, the prospect of passing upon a home-made statute hardly seems becoming or appropriate.
In the obscenity field it is particularly important to have a statute which defines proscribed conduct with exacting preci- . sion. In order to perceive clearly the need for this statutory specificity, it is first necessary to examine the vagueness problem that is endemic with all obscenity prosecutions.
A robber, from a reading of our statutes, knows when he has committed a robbery. From the statutes he knows that if he intends to forcibly steal property from a person without that person’s consent he has violated the law. He has perfect notice as to what the elements of the crime are (see, generally, Penal Law, §§ 160.00-160.15). On the other hand, someone selling a book containing very explicit sex scenes has no such notice. He cannot know what is patently offensive or what offends the community by merely reading the statute. I do not think any court in the land would allow a statute to stand which states that it shall be illegal forcibly to steal property from a person in a manner which is patently offensive and is considered particularly deviant by community standards. The “ robber ” would have no way of knowing which robberies were circumscribed and which were allowed. Yet that is precisely what we have done with our obscenity law. I know of no way of ascertaining the community standard before a decision is rendered. Is a man to be convicted of displaying obscene material even though he successfully gouged the standards of New York City where the material was displayed because our court ultimately decided that the more stringent standards of Elmira were more reflective of State-wide standards?
It is now well settled that obscene material does not fall within the protection of the First Amendment of the United States Constitution (Both v. United States, 354 U. S. 476, 486; *340 Miller, at p. 23). Still, the effect of any vague or overbroad obscenity prohibition ipso facto encroaches on the First Amendment. Certainly, when the potential harm to society is great and the need for action compelling, we must at times allow the courts and Legislatures to run the risk of infringing or at least chilling the right to free speech. But I can see little justification for doing so where the activity being proscribed has only a speculatively harmful effect on society,[1] and even that ineffable harm can be adequately circumscribed by the process of civil injunction.[2] If there is to be a criminal statute without a pro *341 vision for civil injunction, there is absolutely no justification for not making/the statute as specific as possible.
A specifically defined obscenity statute will at least give a defendant notice that he is nearing the borders of permissible conduct. Such minimal notice is essential since the “ community standards” and “patently offensive ’ ’[3] elements of the crime are so vague. Our statute, as authoritatively construed by our court clearly lacks the specificity necessary to give a defendant any adequate notice of proscribed conduct.
T am in total agreement with the legal axiom that whenever possible a court- should construe a legislative enactment in a way that would make it comply with the Constitution. But what we would have to do in this case goes far beyond construction. In order to make our statute constitutional, we would be doing more than construing it, we would be rewriting it. If a court were permitted to provide detailed provisions of a statute, then there would uever be a need to declare any statute unconstitutional for being too vague or overbroad. The judicial officer could merely assume a legislative role and rewrite the defective law. Although we often go .quite far to construe a statute in order to make it comply with the Constitution, the line should be drawn when judicial, construction becomes transmogrified into legislative creation.[4]
Accepting the Supreme Court’s invitation to rewrite our State obscenity statute is particularly unwise and unjust since the rewriting will be done piecemeal.- Obscenity cases lend themselves only to a case by case application (see Mishkin v. New York, 383 U. S. 502, 516 [Black, J., dissenting]). It appears our court will add a new provision to the State obscenity law as each case arises depicting a heretofore unlitigated *342 (in this court) sexual display. Every individual unfortunate enough to be prosecuted under an as of yet unwritten (i.e., an act not previously “ construed ” by this court) portion of the State obscenity statute will be adjudged a criminal even though “he could not reasonably understand” the activity “to be proscribed ” (United States v. Harriss, 347 U. S. 612, 617 [Warren, Ch. J.]).
The constitutional mandate óf giving every individual notice, of what conduct is criminally prohibited (see Lanzetta v. New Jersey, 306 U. S. 451) will be violated every time an individual is arrested before we “ authoritatively construe ” that portion of the statute which applies to him. Such action smacks of judicial ex post facto legislation.[5] (See United States v. Hanson, 9th Cir., No. 73-2603; United States v. Long, C. D. Calif., No. 10712-HP-CD.)
It is clear from a reading of today’s decision that the obscenity field will remain a bothersome and burdensome one for the *343 courts. It is bothersome enough that the courts, of necessity, must enter this morass as part of its judicial function. I think this court has compounded that burden and complexity by deciding today to also enter the field in a legislative capacity. Accordingly I dissent from the majority decision insofar as it holds our State criminal obscenity statute to be constitutional.
Judges Bubke, Bbeitel and Jasen concur with Judge Gabbielli; Judge Jones dissents and votes to reverse in an opinion in which Chief Judge Fuld and Judge Wachtleb concur; Judge Wachtleb dissents in a separate opinion.
In People v. Heller: Upon reargument: Order affirmed.
In People v. Buckley and Goldstem: Order affirmed.

. The Supreme Court has asserted that obscenity is harmful to the “ quality of life” and the “total community environment” (Paris Adult Theatre I v. Slaton, 413 U. S. 49, 58). These conclusions like the alleged link between obscenity and antisocial behavior (Paris, at p. 61) are what the Supreme Court refers to as “ improvable assumptions ” that have been acted upon by civilized societies since the beginning of time (Paris, at p. 60, n. 11). In other words, it is just common sense that obscenity is harmful to society (see Redlich v. Capri Cinema, 43 A D 2d 27). It is common sense to me that the majority of people within any given State, myself included, would find almost all of the material coming before this court in connection with obscenity prosecutions to be offensive and lacking in any value. But it is not a matter of common sense to me that the the majority who finds such material offensive will be harmed in any material way if it allows the minority which finds such material to have some value to partake of it. Indeed, allowing the minority of competent adults to read and view material found offensive to the majority would appear to me to be the hallmark of a truly free -society. Moreover, it is not a matter of common sense to me that a man should have to risk being put in jail for violating an undiscernible standard in order to gain some speculative protections for society as a whole.

. It is almost impossible to distinguish between protected and unprotected speech in the obscenity field (see Paris Adult Theatre I v. Slaton, 413 U. S. 49, 73 [Brenetau, J., dissenting]). That does not necessarily mean that a State cannot outlaw obscenity. However, a criminal prosecution should be commenced only after a person has violated a civil injunction prohibiting the display of the material in question (see Miller, 413 U. S., at p. 37 [Douglas J., dissenting]). The civil injunction would rid the community of the vexatious material as well as provide the possessor of the material with definite notice that his activity is in violation of a criminal statute.
• It should be noted that, although the majority of the Supreme Court did not think the civil injunction process to be constitutionally mandated, they appeared to agree strongly that the civil injunction process was the most certain method of combatting obscenity while at the same time making sure that an individual’s constitutional rights remain inviolate (Paris, at p. 55, n. 4).

. A mere violation of the specifically worded provision of a statute (e.g., showing the genital area) is not a per se violation of part (b) of the Miller formula (413 U. S., at p. 25). The transgression of the statutory provisions must be “ patently offensive ”.

. Another reason why I think we should leave the rewriting of an obscenity statute to the Legislature is to allow it to define what community is encompassed by the-term “ community standards ” in part (b) of the Miller formulation (413 U. S., at p. 25). The majority of our court today has defined community in terms of the entire State. I think that question should be decided by the Legislature after hearings have been held on the matter.

. The majority protests that it is not laying down such a law because the defendants were convicted under a standard carrying a heavier burden of proof ■ for the prosecutor than the one recently annunciated by the Supreme Court in Miller. It is true that part (c) of the Miller test is not as Remanding on the prosecutor as the “utterly without.redeeming social value” test of Memoirs v. Massachusetts (383 U. S. 413, 418). However part (b) of the Miller standard, mandating specificity of definition in State statutes, is more demanding of the prosecutor than was the ease under Memoirs. And even assuming arguendo that specificity has now been added to our statute by the majority decision in this case, it has come after the fact of the defendants’ convictions. Moreover, in all future cases as this court adds specificity to the vague State statute, the creation of a valid law (i.e., by making it specific enough to be constitutional) will unarguably come after the defendant in question has-been convicted.
Actually, our present statute still contains the “utterly without redeeming social value”- test (Penal Law, § 235.00, subd. 1, par. [c]). The majority today asserts that under that test “ The clever pornographer need only infuse some social or political content into the work to escape successful prosecution ”. Yet, the majority then implicitly concedes that this court has, in effect, neglected the "utterly without” test in favor of the “serious value taken as a whole” Miller test for some time before MiUer came down. Such action may have shown great prescience as well as pragmatism on the part -of this court, but until the Legislature changes its Memoirs test to a Miller test, a disregard of the "utterly without ” criteria amounts to judicial nullification of a duly passed and unarguably constitutional legislative act. This is then but another reason why the Legislature and not this court should refashion the criminal obscenity statute.