558 So.2d 55 (1990)
STATE of Florida, Appellant,
v.
Kathleen Denise WARREN and Thomas George Secchiari, Appellees.
No. 88-02884.
District Court of Appeal of Florida, Second District.
January 19, 1990.
Rehearing Denied March 15, 1990.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellant.
Manuel A. Machin, Tampa, for appellees.
ALTENBERND, Judge.
The state appeals an order dismissing an information charging Kathleen Warren and Thomas Secchiari with keeping a house of ill fame in violation of section 796.01, Florida Statutes (1987). The trial court ruled that section 796.01 is unconstitutionally vague. Specifically, the trial court determined that the undefined terms "prostitution," "lewdness," and "ill fame" are unconstitutionally vague as used in this statute. We reverse.
We hold that "prostitution" and "lewdness" are not unconstitutionally vague as used in this statute. Although we have substantial doubt concerning the constitutionality of a statute which makes "ill fame" an undefined essential element of a crime, we decline to invalidate this statute because the Florida Supreme Court has repeatedly enforced it. Instead, we expressly declare the validity of section 796.01, Florida Statutes (1987), in anticipation that the supreme court will exercise its discretionary jurisdiction to review the constitutionality of this statute.[1]
*56 On June 23, 1988, the state filed an information charging Ms. Warren and Mr. Secchiari with keeping a house of ill fame in violation of section 796.01, Florida Statutes (1987).[2] The information states that the two defendants
on the 24th day of May, 1988, in the County of Hillsborough and State of Florida, did keep a house of ill fame resorted to [for] the purpose of prostitution or lewdness, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Florida.
Both defendants pled not guilty and moved to dismiss the information because of the statute's alleged unconstitutional vagueness. From the record, it is unclear what evidence the state intended to introduce to establish a prima facia violation of this statute. A bill of particulars indicates that the state intended to prove that the offense occurred between 3:05 p.m. and 9:05 p.m. on May 24, 1988, and that it took place within a three-mile radius of 3023 West Kennedy Boulevard in Tampa, Florida. From comments made by the prosecutor at the hearing on the motion to dismiss, it appears that the defendants were operating a nude dancing establishment at which some dancers made physical contact with the patrons.
A historical perspective of this statute helps explain our holding. In 1868, the Florida Legislature first enacted a statute against keeping "a house of ill fame, resorted to for the purpose of prostitution or lewdness." Ch. 1637, Sub-Ch. 8, Acts 1868, § 13. The offense was punishable as a misdemeanor. Until 1943, this statute was the primary statute in Florida concerning the crime of prostitution. The statute books typically categorized the crime as an "offense against morality and decency." Fifth Div., Pt. I, Tit. 2, Ch. VII, Rev. Stat. of Fla. (1892). This offense was created at the same time as the "abominable and detestable crime against nature." Ch. 1637, Sub-Ch. 8, Acts 1868, § 17. The two offenses were typically organized adjacent to or near one another in the statute books. §§ 2614, 2615, Rev.Stat. of Fla. (1892); §§ 3534, 3535, Gen.Stat. of Fla. (1906); §§ 5424, 5433, Rev.Gen.Stat. of Fla. (1920); §§ 7567, 7576, Comp. Gen. Laws of Fla. (1927).
In King v. State, 17 Fla. 183 (1879), the Florida Supreme Court first approved an information charging this offense. The court concluded that testimony of the establishment's reputation for "ill fame" was not only permissible, but also necessary to prove the offense.[3]See also Atkinson v. Powledge, 123 Fla. 389, 167 So. 4 (1936). In 1938, the court held that the words "prostitution" and "lewdness" each had a meaning so well known that it was not necessary for their meanings to be stated in the information. State ex rel. Libtz v. Coleman, 130 Fla. 410, 177 So. 725 (1937). Four years later, the court affirmed a conviction under the statute and clearly announced that the offense required the state to prove: (1) ill fame of the place in question; (2) its use for prostitution or lewdness; and (3) its maintenance by the defendant. Campbell v. State, 149 Fla. 701, 6 So.2d 828 (1942). In Campbell, the state established ill fame through the testimony of the county sheriff, who stated that he knew the "general reputation of the place" and that "it was bad." Campbell, 149 Fla. at 701, 6 So.2d at 828.
Soon after Campbell, the legislature enacted a statute which prohibited the keeping of a house of prostitution or lewdness, without reference to its reputation. Ch. 21664, §§ 1-5, Laws of Fla. (1943) (currently §§ 796.04-.07, Fla. Stat. (1987)). Keeping a house of ill fame and keeping a house of *57 prostitution were both misdemeanors, although the element of ill fame resulted in a slightly increased penalty. Following this statutory addition, the supreme court again affirmed a conviction for keeping a house of ill fame. Atkinson v. State, 156 Fla. 449, 23 So.2d 524 (Fla. 1945). In Atkinson, the court held that the legislature did not impliedly repeal the ill fame statute when it enacted the lesser included offense of maintaining a place of lewdness or prostitution. In support of its holding, the court specifically relied upon the separate element of the ill fame of the place in question.
In 1971, the Florida Supreme Court considered the constitutionality of section 800.01, Florida Statutes (1971), which prohibited "the abominable and detestable crime against nature." Franklin v. State, 257 So.2d 21 (Fla. 1971). The court held this sodomy statute unconstitutional due to its vagueness and uncertainty. Much of the criticism which the court aimed at the sodomy statute could also be aimed at the ill fame statute. Both statutes are written in the "guarded wording" of the Victorian Era when proper etiquette discouraged a direct discussion of sexuality, even in a statute penalizing sexual activity. The court stated:
This statute and others relating to a variety of sex offenses need immediate legislative review and action. We urgently commend this important area of great social concern for appropriate remedial legislation.
Id. at 22-23.
Despite the "urgency" perceived by the supreme court, the legislature did not amend section 796.01 until 1981. In that year, the legislature increased the penalty for keeping a house of ill fame by making the crime a felony. The legislature, however, did not change the archaic description of the substantive offense. As a result of the 1981 amendment, the essential element of "ill fame" is now the dividing line between a misdemeanor and a felony.
In 1981, the supreme court considered a case in which the defendant had been convicted of racketeering based upon his operation of a house of prostitution in violation of section 796.07(2)(a), Florida Statutes (1977). Carlson v. State, 405 So.2d 173 (Fla. 1981). The court held that the racketeering conviction was barred by double jeopardy because the defendant had previously been convicted of keeping a house of ill fame under section 796.01, Florida Statutes (1977). The court noted that keeping a house of ill fame requires proof of three elements, and that keeping a house of prostitution requires proof of two of the same elements. Thus, the court concluded that operating a house of prostitution is a lesser included offense of keeping a house of ill fame. Although unconstitutional vagueness is not discussed in Carlson, the case at least implicitly suggests the constitutionality of section 796.01 a decade after Franklin had voided the comparable sodomy statute.
A statute is unconstitutionally void for vagueness if it fails to give a person of ordinary intelligence fair notice of what conduct is forbidden by the statute. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989, (1954). Criminal statutes must be written with sufficient specificity so that citizens are given fair warning of the offending conduct, and law enforcement officers are prevented from engaging in arbitrary and erratic enforcement activity. Papachristou; Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).
We do not believe that the undefined words, "prostitution" and "lewdness," in this statute render it unconstitutionally vague. Prostitution is defined as "the giving or receiving of the body for sexual activity for hire." § 796.07(1)(a), Fla. Stat. (1987). That same statute defines lewdness as "any indecent or obscene act." § 796.07(1)(b), Fla. Stat. (1987). The Florida Supreme Court approved both of these definitions in Bell v. State, 289 So.2d 388 (Fla. 1973). Significantly, this approval occurred two years after the court had disapproved *58 the sodomy statute in Franklin. Although the definitions in section 796.07 do not expressly apply to section 796.01, a person of ordinary intelligence would reasonably conclude that the two statutes intend the same definitions for these words. This is particularly true since section 796.07 is a lesser included offense of section 796.01. Carlson.
The undefined, essential element of "ill fame," however, presents a more troubling issue. Because this undefined element distinguishes a misdemeanor from a felony, there is a greater need for the public to have fair notice of the distinction it creates. Not only does the statute fail to provide a definition of ill fame, but there are no standard jury instructions or precedents which attempt to clarify this element.
Since statutes must be so well written as to provide fair notice to ordinary citizens, it is significant that police officers, attorneys, and jurists have difficulty recognizing the essence of "ill fame."[4] When does a police officer have probable cause to believe that a house of prostitution has earned an ill reputation? What proof must the state present to establish a prima facia case of ill fame? The population of most of Florida's counties is now so large that a sheriff would have difficulty providing sworn testimony on the general reputation of the houses within his or her jurisdiction. Assuming the prosecutor were successful in establishing prima facie proof of ill fame, one finds it hard to envision a defense attorney presenting proof that the defendant is guilty of only the lesser included misdemeanor because the defendant's house is merely a quiet little bordello with a sterling reputation. Perhaps the statute is intended to create a greater penalty concerning a house that has a long history as a public nuisance.[5] Without additional statutory language and specific jury instructions, however, it is difficult to believe that any jury would decide that a house of prostitution or lewdness, whose owner had been arrested for engaging in criminal conduct, had an acceptable reputation.
We would affirm the trial court's decision concerning the unconstitutional vagueness of "ill fame" except for the several decisions of the Florida Supreme Court upholding or applying this statute over the last 120 years. In light of those cases, it is preferable for us to expressly uphold the validity of the statute and permit the supreme court to review the issue. See Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) (decision of the supreme court shall prevail until overruled by a subsequent decision of the supreme court).
Repeating the suggestion in Franklin, we encourage the legislature to review this timeworn statute. It may be that the felony provision in Florida's Racketeer Influenced and Corrupt Organization Act makes section 796.01 unnecessary. §§ 895.02(1)(a)15, .04(1), Fla. Stat. (1987). We note that the legislature has previously enacted statutes which subject persons to felony penalties for repeat misdemeanors. § 316.193(2)(b), Fla. Stat. (1987) (felony driving under the influence); § 812.014(2)(d), Fla. Stat. (1987) (felony petit theft). Thus, the legislature could enact a felony statute for this offense predicated upon an express objective standard, rather than upon the subjective standard of ill fame.
Reversed and remanded for further proceedings consistent herewith.
FRANK, A.C.J., and PARKER, J., concur.
NOTES
[1] Fla.R.App.P. 9.030(a)(2)(A)(i).
[2] "Ill fame" is defined as "evil repute" or "notorious bad character." Black's Law Dictionary 673 (5th ed. 1979). A house of ill fame is generally defined as "a place kept for the convenience of people of both sexes in resorting to lewdness." 24 Am.Jur.2d Disorderly Houses § 2 (1983).
[3] Florida has adopted the minority position which requires proof of the general ill reputation of the house. Most states merely require proof that the house is being used for lewdness or prostitution. 24 Am.Jur.2d Disorderly Houses § 18 (1983). Thus, most states do not distinguish between a house of prostitution or lewdness and a house of ill fame.
[4] In the related opinion which we have also issued this date, State v. Palmieri, 558 So.2d 53 (Fla. 2d DCA 1990), the prosecutor stated that the state's delay of 147 days in filing the information in that case was attributable to the concern of the state attorney's office and the sheriff's office in proving the essential element of ill fame. The prosecutor candidly observed, "How are we going to prove that element, what witness are we going to use?"
[5] Interestingly, since 1917 any house of prostitution, assignation, or lewdness has been subject to abatement as a nuisance, without regard to its reputation. Ch. 7367, § 1, Laws of Fla. (1917) (currently § 823.05, Fla. Stat. (1987)).