

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

January 30, 1990

Mr. Pasco Parker
Collin County Auditor
210 South McDonald Street
McKinney, Texas 75069

Opinion No. JM-1137

Re: Whether a county auditor may prescribe a weekly revenue reporting format which requires certification by an elected official (RQ-1760)

Dear Mr. Parker:

You ask whether a county auditor may prescribe a weekly revenue reporting format which requires the notarized signature of elected county officials. Your question is prompted by an order of the commissioners court of Collin County adopted at the request of the county auditor. The order requires weekly remittances of collections made by the county tax assessor-collector. The order also authorizes the auditor to prepare a weekly reporting format pursuant to sections 112.001 and 114.003 of the Local Government Code.

Your letter suggests that the order of the commissioners court was adopted pursuant to section 31.10 of the Tax Code:

> (a) Each month the collector of taxes for a taxing unit[1] shall prepare and submit to the governing body of the unit a written report made under oath accounting for all taxes collected for the unit during the preceding month. Reports of collections made in the months of October through January are due on the 25th day of the month following the month that is the subject of the report. Reports of collections made in all other

---

1. A county is included in the definition of the term "taxing unit." Tax Code § 1.04(12).

p. 5988

months are due on the 15th day of the month following the month that is the subject of the report. A collector for more than one taxing unit may prepare one report accounting for taxes collected for all units, and he may submit a certified copy of the report as his monthly report to the governing body of each unit.

(b) The collector for a taxing unit shall prepare and submit to the governing body of the unit an annual report made under oath accounting for all taxes of the unit collected or delinquent on property taxed by the unit during the preceding 12-month period. . . .

(c) . . .[A]t least monthly the collector for a taxing unit shall deposit in the unit's depository all taxes collected for the unit. The governing body of a unit may require deposits to be made more frequently.

The language of subsection (c) would appear to grant the commissioners court the authority to adopt the order requiring the county tax assessor-collector to make weekly remittances of tax collections. However, a separate statute appears to specifically address the duty of the county tax assessor-collector to make deposits of tax collections in a manner that conflicts with section 31.10. In order to demonstrate that section 31.10 is the governing provision, a review of the second provision is necessary.

Section 113.021(a) of the Local Government Code provides:

The fees, commissions, funds, and other money belonging to a county shall be deposited with the county treasurer by the officer who collects the money. The officer must deposit the money in accordance with any applicable procedures prescribed by or under Section 112.001 or 112.002. However, the county tax assessor-collector must deposit the money in accordance with the procedures prescribed by or under the Tax Code and other laws. (Emphasis added.)

Section 116.113(b) of the Local Government Code states:

> A county tax assessor-collector <u>shall immediately deposit</u> in the county depository taxes collected on behalf of the state, the county, or a district or municipal sub-division of the county. The taxes remain on deposit pending the preparation and settlement of the assessor-collector's report on the tax collections. (Emphasis added.)

A familiar and well-established rule of statutory construction provides that when a general statutory provision and a specific statutory provision are in conflict, the former provision yields and the latter prevails. <u>See</u> 67 Tex. Jur. 3d <u>Statutes</u> § 126 (1989) and cases cited therein; <u>see also</u> Gov't Code § 311.026 (a special or local provision prevails over a general provision in the event of irreconcilable conflict). It would therefore appear that section 116.113 of the Local Government Code, giving more specific instructions to the county tax assessor-collector regarding the deposit of tax collections, would prevail over section 31.10 of the Tax Code as it relates to such deposits.

Section 116.113, however, was enacted as part of the nonsubstantive revision of statutes relating to local governments. Local Gov't Code § 1.001(a). It is derived from former V.T.C.S. article 2549,[2] which was repealed with the enactment of the Local Government Code. Acts 1987, 70th Leg., ch. 149, § 49, at 1306. Section 31.10 was enacted in 1979 as part of Title 1 of the Tax Code, also known as the Property Tax Code. <u>See</u> Acts 1979, 66th Leg., ch. 841, § 1, at 2217. Subsections (a)(1), (c), and (d) of section 6 of the bill enacting the Property Tax Code listed the various civil statutes which were expressly repealed by the bill; article 2549 was not among those statutes. Section 6(b) of the bill, though, provided the following:

> All other general, local, or special laws in conflict with this Act are repealed to the extent of the conflict, and the failure expressly to repeal or amend any law in conflict with this Act is not evidence of a

---

2. Article 2549, V.T.C.S., set out procedures for designating the county depository and for placing funds in the depository.

> legislative intent that the law not be repealed.

Id. § 6(b), at 2330.

The language just quoted makes it clear that the provisions of section 31.10 of the Tax Code supersede conflicting provisions of article 2549. The enactment of section 116.113(b) as part of the Local Government Code did not serve to revive the repealed portion of article 2549. See Gov't Code § 323.007(b) (when revising a statute the legislative council, charged with the duty to execute the permanent statutory revision program, may not alter the sense, meaning, or effect of the statute). It is therefore clear that the commissioners court was authorized to adopt the order requiring the county tax assessor-collector to make weekly deposits of tax collections. The issue that remains is whether the county auditor may require the tax assessor-collector to file a notarized revenue reporting form on a weekly basis.

You do not describe the content of the weekly revenue reporting format and do not disclose whether it is intended primarily for the use of the county auditor or the commissioners court. Since the order of the commissioners court is predicated on the authority of sections 112.001 and 114.003 of the Local Government Code, which pertain chiefly to the county auditor, we will assume that the report is intended solely for use by the auditor.

Section 112.001 of the Local Government Code provides the following:

> In a county with a population of less than 190,000, the county auditor may adopt and enforce regulations, not inconsistent with law or with a rule adopted under Section 112.003,[3] that the auditor considers necessary for the speedy and proper collecting, checking, and accounting of the revenues

---

3. Section 112.003 of the Local Government Code requires the comptroller of public accounts to prescribe 1) forms to be used by county officials in the collection of county revenue and disbursement of funds and 2) the manner of keeping and stating the accounts of officials.

> and other funds and fees that belong to the county.

Section 114.003(a) provides:

> A county official or other person who is required under this subtitle [subtitle B of title 4 of Local Government Code chapters 111-119 and 130] to provide a <u>report</u>, <u>statement</u>, or other information to the county auditor and who intentionally refuses to comply with a reasonable request of the county auditor relating to the <u>report</u>, <u>statement</u>, or information, commits an offense. (Emphasis added.)

In order to fully appreciate the import of these provisions we must consult other sections of the Local Government Code relating to county finances and reporting.

Section 114.001(a) of the Local Government Code provides the following:

> Each <u>report</u> required under this subtitle [title 4, subtitle B] must be made in writing <u>and must be sworn to by the officer making the report before an officer authorized to administer oaths</u>. (Emphasis added.)

The county auditor is required under section 114.002 to determine the time and manner for making reports to the auditor as required by subtitle B of title 4 of the Local Government Code. Section 114.001(a), however, applies to all reports required by subtitle B and not merely to those that must be submitted to the county auditor. <u>See, e.g.</u>, Local Gov't Code §§ 114.023 (county auditor's monthly report to commissioners court in a county with population of more than 225,000), 114.024 (auditor's report to commissioners court at each regular meeting of court), 114.025 (auditor's monthly and annual reports to commissioners court and district judges), 114.042 (report to county clerk by officer who collects county funds), 114.044 (report to commissioners court by officer who collects fines, jury fees, or judgments), 114.045 (district attorney's report to county clerk relating to county money received since last term of district court), 114.046 (annual report of county officers compensated on fee basis), 114.061 (county treasurer's monthly claims report to county clerk). Likewise, section 114.001(a) would not apply to reports submitted to the commissioners court or county auditor under provisions of

the Local Government Code outside of subtitle B of title 4. See, e.g., id. § 152.035(d) (mileage reimbursement to county auditor or assistants made on basis of sworn monthly expense report).

Sections 114.001 and 114.002 are to be contrasted with section 112.005 of the Local Government Code, which requires the county auditor to maintain accounts for each county officer authorized or required by law to receive or collect money that belongs to, or is intended for use by, the county. Subsection (c) of that provision states:

> The auditor shall require each person who receives money that belongs to the county . . . to render statements to the auditor. (Emphasis added.)

Id. § 112.005(c).[4]

The distinction between "reports" and "statements" is significant because reports which are required by subtitle B of title 4 of the Local Government Code must be sworn to by the officer presenting them. "Statements" that may be required by the auditor under section 112.005, on the other hand, apparently need not be delivered under oath.[5] There are several reasons for this conclusion.

---

4. Other provisions of subchapter B require the preparation or filing of "statements." Section 114.041 requires a district, county, or precinct officer to keep as part of his official records a "statement" of the fees, commissions, costs, or amounts "earned by the officer" or received by him as deposits for costs or trust fund deposits. Section 116.117 requires the county depository to provide the commissioners court with a "detailed monthly statement" at each regular term of the court. In addition, section 114.021, entitled "County Clerk's Report to Commissioners Court at Regular Term," requires the clerk to maintain and present "a tabular statement" and specifies its contents. (Emphasis added.)

5. This fact does not relieve the officer who submits a statement to the county auditor or under whose authority a statement is submitted of the obligation to ensure the accuracy and truthfulness of the statement. See Penal Code § 37.10 (tampering with, falsification of, or unlawful destruction of a governmental record).

First, we note that the legislature has demonstrated that when it intends to require county officers to provide information under oath, it does so expressly. See, e.g., Local Gov't Code § 152.035(d) (county auditor's sworn monthly mileage expense report); Attorney General Opinion V-1309 (1951). Also, the fact that section 114.003 imposes a criminal penalty for the intentional failure of a county officer to comply with a reasonable request from the auditor concerning a "report, statement, or other information" that is required under subtitle B indicates that, simply as a matter of statutory construction, the terms "report" and "statement" are not intended to be synonymous. Questions of due process would arise under section 114.003 if "statements" were required to be sworn to by the officer rendering the statement because section 114.001 gives notice only that "reports" must be delivered under oath. A county officer prosecuted under section 114.003 for failing to submit a section 112.005 statement under oath could argue that section 114.003 is unconstitutionally vague because neither it nor section 114.001 give fair warning that such conduct is unlawful. See generally Lanzetta v. New Jersey, 306 U.S. 451 (1939); Tex. Const. art. I, § 10 (every citizen is entitled to know the nature of an accusation against him).

The relevance of this distinction is demonstrated by section 114.043 of the Local Government Code, which contains the following pertinent language:

> In a county with a population of 190,000 or more, the county auditor may require a district clerk, district attorney, county officer, or precinct officer to furnish monthly reports, annual reports, or other reports regarding any money, tax, or fee received, disbursed, or remaining on hand. In connection with those reports, the auditor may count the cash in the custody of the officer or verify the amount on deposit in the bank in which the officer has deposited the cash for safekeeping. (Emphasis added.)

Section 114.043 confirms that the legislature did not intend section 112.005 statements to be the equivalent of section 114.001 reports; otherwise, there would have been no need to enact section 114.043. Under this provision a county auditor could clearly require a county tax assessor-collector to file reports -- which under section 114.001 would have to be sworn to by the assessor-collector -- regarding the receipt of taxes by his office.

Section 114.043 is equally important because it reveals the legislature's understanding of the nature of the county auditor's general powers. That the legislature thought it necessary to expressly provide county auditors in counties with populations of 190,000 or greater the powers described in section 114.043 is significant because, like their counterparts in counties with fewer than 190,000 inhabitants, they have the power to adopt and enforce regulations necessary for the speedy and proper collecting, checking, and accounting of county funds. Local Gov't Code § 112.002. This office has in the past interpreted this and other grants of authority to the county auditor broadly to permit the auditor to obtain information from county officers that is necessary to the accomplishment of the auditor's statutory duties. See, e.g., Attorney General Opinion JM-1099 (1989) and authorities cited therein. But we have also rejected attempts by county auditors, through the use of a reporting requirement, to interfere in matters that are left to the discretion of other county officers. See, e.g., Attorney General Opinion JM-879 (1988) (county auditor could not require members of commissioners court who receive fixed monthly travel allowances to file travel documentation).

We have located no similar express grant of authority to county auditors in counties with populations of less than 190,000. If the legislature deemed the general powers of the county auditor as inadequate to confer the power described in section 114.043, then we do not believe the authority you inquire about may be implied from sections 112.001 and 114.003 of the Local Government Code.

Accordingly, we conclude that the county auditor in a county with a population of less than 190,000 may not require the county tax assessor-collector to submit notarized or sworn weekly revenue reports to the auditor pursuant to sections 112.001 and 114.003 of the Local Government Code. However, we do believe that the auditor may require county officers who receive money belonging to the county to submit unsworn statements under section 112.005 of the Local Government Code in a form and manner prescribed by the auditor. See Attorney General Opinions JM-1099 (1989); V-1309 (1951).

### S U M M A R Y

A county auditor in a county with a population of less than 190,000 may not require the county tax assessor-collector to submit notarized or sworn weekly revenue reports to the auditor pursuant to Local

Government Code sections 112.001 and 114.003. The county auditor may require county officers who receive money belonging to the county to submit unsworn statements to the auditor under section 112.005 of the Local Government Code in a form and manner prescribed by the auditor.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General