92 N.J. Super. 65 (1966)
222 A.2d 145
BOROUGH OF VERONA, PLAINTIFF-RESPONDENT,
v.
BENJAMIN SHALIT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division  Criminal.
Decided July 12, 1966.
*66 Mr. Kenneth R. Stein for appellant (Messrs. Stein & Stein, attorneys).
Mr. Emil E. Mascia for respondent (Messrs. Sarcone & Mascia, attorneys).
KAPP, J.C.C.
This is a trial de novo. Defendant Benjamin Shalit is the owner of two adjoining garden-type apartment buildings on Bloomfield Avenue, Verona, New Jersey, which were constructed at the same time in 1961. Each building contains a built-in incinerator for garbage disposal, supplied by the Sargent Incinerator Company. The complaint in this case is directed solely to the premises referred to as 800 Bloomfield Avenue, which consists of 16 two-room apartments.
Shalit was tried and convicted before the municipal court of the borough upon a complaint which alleges that on May 17, 1965, he
"* * * did permit the escape of gas, smoke and obnoxious odors which were a source of physical distress to others; said gas, smoke, odors emanating from the incinerator chimney owned and maintained by said Benjamin Shalit at 800 Bloomfield Avenue, Verona, New Jersey in violation of the Borough of Verona Board of Health, `Sanitary Code', Section 6, entitled `Nuisances', more particularly, paragraph 11, passed February 15, 1965 * * *."
Section 6 is entitled "Nuisances." Prefatorily it provides that:
"The maintaining of anything whatsoever which is a hazard or a danger to human health, and the following specific acts, conditions or states are, each and every one, declared to be and constitute a nuisance." *67 The pertinent "specific acts" of section 6 upon which the complaint is grounded, read as follows:
"Any chimney, smoke-stack, pipe or flue, or any part thereof, or any connection therewith, that is so defective or out of repair as to allow gas or other noxious fumes to escape into the building and any gas-pipe or other fixture, from which may issue any foul or obnoxious odors or liquids.

* * * * * * * *
The escape of any gas, fumes, smoke, or other odors that may be of a menace to human life, or is by reason of disagreeable or obnoxious odors a source of physical distress to persons in the vicinity."
The Air Pollution Control Act, L. 1954, c. 212, § 1, N.J.S.A. 26:2C-1 et seq., authorized the establishment of an Air Pollution Control Commission within the State Department of Health and invested it with the power to formulate and promulgate a code to regulate, control and prohibit air pollution throughout the State. By virtue of said authority there was adopted the "New Jersey Air Pollution Control Code."
N.J.S.A. 26:2C-22 further provides that:
"* * * Nothing in this act or in any code, rules or regulations promulgated pursuant thereto shall preclude the right of any governing body of a municipality or county or board of health to adopt ordinances or regulations not inconsistent with this act or any code, rules or regulations promulgated pursuant thereto." (Emphasis supplied)
The Code also contains definitions of fuel-burning equipment and of smoke; it provides as well for the grading of the density of smoke according to the Ringelmann Smoke Chart, and specifies the circumstances under which greater amounts of smoke are permissible.
The borough ordinance, however, does not define fuel-burning equipment nor smoke; nor does it indicate the impermissible type of smoke emissions or recognize any allowable exceptions under special circumstances; nor are we advised of any standards of measurement. One portion of section 6 of the ordinance provides that smoke or odor, so generated, becomes illegal when it is a "danger to human *68 health * * * or is by reason of disagreeable or obnoxious odors a source of physical distress to persons in the vicinity."
The state statute has determined that smoke exceeding the density specifications of No. 2 of the Ringelmann Smoke Chart is "injurious to human * * * life," but it contains certain allowable exceptions. The municipal code prohibits smoke when dangerous "to human health," but without exceptions. Obviously, the local ordinance is more restrictive in this critical area. Moreover, the ordinance prohibits "obnoxious odors" when a cause of "physical distress to persons in the vicinity." Also prohibited as nuisances by this ordinance are chimneys, etc., "from which may issue any foul or obnoxious odors." The New Jersey Air Pollution Control Code, however, does not contain any prohibition against odors. The statute defines "air pollution" as "the presence in the outdoor atmosphere of substances * * *" N.J.S.A. 26:2C-2 (emphasis supplied). Such substances, as per the Air Pollution Control Code, may include smoke, fly ash, air contaminants, consisting of "coarse and fine solid particles, liquid particles, vapors or gases which are discharged into the outdoor atmosphere."
Thus, the borough has incorporated within its ordinance a new category which is not to be found in the State Air Pollution Code. In so doing it has enlarged the interdicted area of activity by ordinance where it is not granted the authority to do so by the State Code. The State Sanitary Code, however, N.J.S.A. 26:1A-7 et seq., authorized the adoption of local health ordinances.
While N.J.S.A. 26:1A-9 reads (in part) as follows:
"* * * but such ordinances, rules and regulations shall not be in conflict with the laws of this State or the provisions of the State Sanitary Code, except, however, that such ordinances, rules and regulations may be more restrictive than the provisions of the State Sanitary Code,"
and indicates that, absent the exception, such a more restrictive local sanitary ordinance would be in conflict with *69 the declared pre-emption under state law, yet the enabling provision relating to air pollution control, N.J.S.A. 26:2C-22, with which we are presently concerned, does not contain such an exception as would authorize and validate a more restrictive local air pollution ordinance.
In Shaw v. Byram Tp., 86 N.J. Super. 598 (App. Div. 1965), plaintiff challenged the validity of a local ordinance as one that was incompatible with the State Sanitary Code because it was more restrictive than the state provision. The court struck down this contention and observed that the answer was to be found by reference to the enabling act under which the Code was adopted, which provides that "such ordinances, rules and regulations may be more restrictive than the provisions of the State Sanitary Code." Implicit in this decision is the corollary that where the statute does not confer upon the municipality the right to adopt ordinances that may be more restrictive, it may not do so.
As already stated, we find no such exception in the statute, N.J.S.A. 26:2C-1 et seq., involved here.
Having introduced an unauthorized element into this proscribed area renders section 6 of said municipal ordinance invalid since it is in conflict with the statute, N.J.S.A. 26:2C-1.
Section 6 is invalid for another reason, because it fails to inform those to whom it is addressed of a proscribed standard of conduct, so that men of common intelligence must necessarily guess at its meaning and differ as to its application. State v. New York Central R.R. Co., 37 N.J. Super. 42, 46 (App. Div. 1955); State v. Joas, 34 N.J. 179 (1961).
In this action defendant should be accorded the same measure of specificity under a municipal penal ordinance as is demanded of the penal statutes of this State.
Thus do we find in Township of Maplewood v. Tannenhaus, 64 N.J. Super. 80 (App. Div. 1960) that:
*70 "Penal and restrictive laws and ordinances must be strictly construed. All doubts as to their applicability must be resolved in favor of a defendant charged with violation thereof. It is offensive to fundamental concepts of justice and violative of due process of law, as a matter of substance to impose sanctions for violations of laws, whose language is doubtful, vague, and uncertain." (at p. 89)
Defendant here could not determine from the ordinance how much smoke was prohibited, or how he would have to correct his burning procedure. The ordinance permits the court to decide arbitrarily the quantum of smoke required to visit conviction and to impose a criminal penalty on the defendant.
In Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575 (1934), the court said:
"* * * What may not be taken away is notice of the charge and an adequate opportunity to be heard in defense of it [citing cases]." (at p. 105, 54 S.Ct., at p. 332)
Likewise, Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948):
"No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. * * * It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made. De Jonge v. State of Oregon, 299 U.S. 253, 362, 81 L.Ed. 278, 282, 57 S.Ct. 255." (at p. 201, 68 S.Ct., at p. 517)
Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926), declares:
"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids *71 or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. International Harvester Co. [of America] v. [Com. of] Kentucky, 234 U.S. 216, 221, 34 S.Ct. 853, 58 L.Ed. 1284; Collins v. [Com. of] Kentucky, 234 U.S. 634, 638, 34 S.Ct. 924, 58 L.Ed. 1510." (at p. 391, 46 S.Ct., at p. 127)
Mr. Justice Douglas, in United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952), has stated that:
"The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited.

* * * * * * * *
Words which are vague and fluid * * * may be as much of a trap for the innocent as the ancient laws of Caligula."
As to "any foul or obnoxious odors * * * or other odors * * * or disagreeable or obnoxious odors," as set out in section 6 of the ordinance, we find the same conclusionary language set out in the complaint herein, without benefit of any facts.
In Pfister Chemical Co. v. Romano, 15 N.J. Misc. 71, 73, 188 A. 727 (Sup. Ct. 1937), the return to the writ of certiorari recites that the prosecutor did, on a certain date and between certain hours of that day, permit and allow the escape of fumes, vapors, etc., in sufficient quantity to cause injury to health and damage to property within the meaning and intent of the ordinance in question. The Supreme Court held that this was "a mere conclusion on the part of the recorder of the municipality without any facts upon which it may be justified."
Again, as to odors, Vice-Chancellor Stevens, in Doremus v. Mayor and City of Paterson, 73 N.J. Eq. 474, 499 (Ch. 1907), on remand from the Court of Errors and Appeals, Simmons v. City of Paterson, 60 N.J. Eq. 385 (1899) observed that "people are differently affected by smells. To one, one kind of smell is objectionable; to another, another."
Taking note once more of section 6, we discern that
*72 "The following specific acts, conditions or states are, each and every one, declared to be and constitute a nuisance: Any chimney * * * that is so defective * * * as to allow noxious fumes to escape * * * and any gas-pipe * * * from which may issue any foul or obnoxious odors * * *."
In City of Milwaukee v. Milbrew, 240 Wis. 527, 3 N.W.2d 386, 141 A.L.R. 277 (Sup. Ct. 1942), in a somewhat similar situation, it is stated:
"To construe this ordinance as attempting to condemn as `offensive' any odor that is merely disagreeable to, or disliked by, an indefinite number of persons in a given neighborhood would render the legislation void as too vague and indefinite for enforcement, [citations] or would turn the question of the existence of a nuisance into a plebiscite of the neighborhood and amount to an unlawful delegation of authority [citations]."
Section 6 of the municipal ordinance is therefore declared to be invalid, and defendant is accordingly not guilty of the charges against him for the reasons stated.