PEOPLE v OLSONITE CORPORATION

(WAYNE COUNTY v OLSONITE CORPORATION)

1. Health and Environment—Air Pollution—Pollution Regulations—Legislative Intent.

The legislative intent in including within the Wayne County Air Pollution Control Regulation a general all-encompassing section proscribing emissions of air contaminants was to include as an offense those emissions which, while not measurable by precise standards, nevertheless are injurious or actually endanger the public health or harm property (Wayne County Air Pollution Control Regulation, Art VI, § 6.5).

2. Health and Environment—Air Pollution—Nuisance—Pollution Regulations.

A section of the Wayne County Air Pollution Control Act which proscribes emission of air contaminants in general is not a definition of a common-law criminal nuisance but is intended to describe conduct different than a nuisance (Wayne County Air Pollution Control Regulation, Art VI, § 6.5).

3. Statutes—Vagueness—Constitutional Law—Due Process.

A statute which either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

4. Criminal Law—Constitutional Law—Statutes—Vagueness—Subjective Language.

No one may be punished for doing an act prohibited by a statute

References for Points in Headnotes

[1] 61 Am Jur 2d, Pollution Control §§ 37, 43.

[1, 3–6] Smoke: validity of regulation of smoke and other air pollution. 78 ALR2d 1305.

[2] 61 Am Jur 2d, Pollution Control §§ 37, 43.

[3, 4, 5, 6] 16 Am Jur 2d, Constitutional Law § 552.

[3, 5, 6] 73 Am Jur 2d, Statutes § 346.

[4, 6] 21 Am Jur 2d, Criminal Law § 17.

[5] 61 Am Jur 2d, Pollution Control §§ 37, 39, 40.

unless an ordinary person can determine in advance what he or she may or may not do under that statute; a proscription against air pollution which is worded in subjective terms is unenforceably vague where it cannot be said that a person can determine in advance what may or may not be criminally punishable (Wayne County Air Pollution Control Regulation, Art I, § 1.3, Art VI, § 6.5).

5. HEALTH AND ENVIRONMENT—AIR POLLUTION—POLLUTION REGULA- TIONS—CONSTITUTIONAL LAW—VAGUENESS—LACK OF STAN- DARDS—ENFORCEMENT.

A section of the Wayne County Air Pollution Control Regulation which proscribes emission of contaminants is impermissibly vague where it offers no reasonably precise standard to those charged with its enforcement (Wayne County Air Pollution Control Regulation, Art VI, § 6.5).

6. HEALTH AND ENVIRONMENT—ENVIRONMENTAL LEGISLATION—CON- STITUTIONAL LAW—DUE PROCESS—DEFINITENESS.

Environmental legislation is not exempt from the due process requirement of definiteness.

Appeal from Wayne, Myron H. Wahls, J. Submitted November 15, 1977, at Detroit. (Docket No. 31473.) Decided January 23, 1978.

Olsonite Corporation was convicted in municipal court of four separate violations of the Wayne County Air Pollution Control Regulation. Olsonite appealed to the circuit court, which granted a motion to dismiss and vacated the convictions. The people appeal by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Donald A. Campbell* and *Joseph B. Klein,* Assistants Prosecuting Attorney, for the people.

*Honigman, Miller, Schwartz & Cohn* (by *Robert A. Fineman* and *John Sklar),* for defendant.

Before: BRONSON, P. J., and T. M. BURNS and ALLEN, JJ.

ALLEN, J. We are asked to decide whether a regulation of the Wayne County Air Pollution Control Division declaring it unlawful and a criminal offense for any person to permit or cause the emission of air contaminants which would be detrimental to or endanger the health, comfort or safety of any person or the public, is void and unenforceable for vagueness. On August 27, 1976, the circuit court for Wayne County held it was, and granted defendant's motion to dismiss. Plaintiff appeals by leave granted.

Article VI, § 6.5 of the Wayne County Air Pollution Control Regulation, the single section in dispute in the instant case, is preceded by §§ 6.1–6.4, each of which prescribe specific measurable standards for determining air pollution.[1] Section 6.5 is a generally worded section not subject to definitely ascertainable measurement. It reads:

"Section 6.5 General Prohibition:
"a. It shall be unlawful for any person to permit or cause the emission of such quantities of air contaminants from whatever source in such place or manner as to be detrimental to any person or to the public or to endanger the health, comfort, or safety of any person or

---

[1] Section 6.1 deals with visible emissions measured in terms of the Ringelmann chart published by the Bureau of Mines, United States Department of Interior, which is a method of grading shades of visible emissions by use of a scale from 1 to 5, or by percentage of opacity of a visible plume that is in a state that renders material partially impervious to rays of light and causes obstruction to an observer's view. Section 6.2 pertains to particulate matter and establishes maximum allowable emissions measured in pounds of particulate per thousand pounds of exhaust gas. Violation of § 6.2 is determined by use of instrumentation which probes the stack or violating source and extracts a sample of the effluent which is being emitted into the atmosphere. Section 6.3 deals with the particular odor of sulphur oxide but does not define other odors. Section 6.4 prohibits open burning.

the public, or in such manner as to cause injury or damage to property or business. Each day wherein a violation of this section occurs shall constitute a separate offense. Any act of emission of air contaminants from any single or multiple source in violation or excess of the limitations established in or pursuant to 6.1, 6.2, 6.3, and 6.4 of this Regulation shall be unlawful, and may be ordered abated by the Director. Such abatement may be in addition to the fines and penalties herein provided.

"b. Nothing in any section of this Regulation relating to regulation of emission of air contaminants shall in any manner be construed as authorizing or legalizing the erection or maintenance of a nuisance."

In September 1975, two complaints were filed against defendant, alleging that on five different days the defendant violated § 6.5. Following trial in the municipal court for the City of Hamtramck, defendant was found guilty of three of the four counts of the first complaint and guilty of the single charge in the second complaint and was fined $100 on each count. Defendant appealed to the circuit court which granted defendant's motion to dismiss, and vacated the convictions.

I

Our first inquiry is whether, as plaintiff claims, § 6.5 states a separate offense or whether, as defendant contends, it only states in general language emissions which violate the specific standards spelled out in §§ 6.1–6.4. Defendant contends a 6.5 offense arises only where §§ 6.1, 6.2, 6.3, *or* 6.4 have been violated and cites the following passage from *People v Powell,* 280 Mich 699, 704; 274 NW 372 (1937):

"Where no intention to the contrary appears, general words used after specific terms are to be confined to

things *ejusdem generis* with the things previously specified.

"When, after an enumeration, the statute employs some general term to embrace other cases, the other cases must be understood to be cases of the same general character, sort or kind with those named." (Citations omitted.)

The issue posed is important because plaintiff frankly admitted at oral argument that the emissions in question did not violate §§ 6.1–6.4. The offensive nature of the violations charged was odor, which being non-sulphuric in nature, was not chargeable under § 6.3. According to plaintiff, most odors, being invisible, are difficult to define and hence are chargeable under the comprehensive language of 6.5.

There is no question but that § 6.5 is inartfully drawn and is subject to four possible interpretations.[2] This possible four-way ambiguity primarily arises because § 6.5 specifically refers to the preceding four sections but also provides that any violation of the four sections may be abated in addition to the criminal penalties imposed. A violation of 6.5 is punishable by criminal penalty without abatement. Both litigants agree, as do we, that the regulatory provisions must be read as a whole. *People v Babcock,* 343 Mich 671, 678–679; 73 NW2d 521 (1955). Having read the air pollution

---

[2] The four possible interpretations are: (1) 6.5 is a totally separate violation for which criminal penalties apply. 6.1–6.4 violations are totally unrelated and, in addition to the criminal penalties imposed, may be abated. (2) 6.5 is a separate violation but can also include violations of 6.1–6.4. Where a 6.1–6.4 violation is part of the 6.5 violation, abatement is an additional remedy. (3) Only where the regulations of 6.1, 6.2, 6.3 or 6.4 have *also* been violated is there a 6.5 violation. Under this interpretation, compliance with 6.1–6.4 avoids violation of 6.5, but a 6.1–6.4 violation does not necessarily mean 6.5 has been violated. (4) A 6.1–6.4 violation is always a violation of 6.5. Plaintiff interprets the regulations as per interpretation (1), and defendant argues for interpretation (4).

regulations in their entirety and having considered the entire regulation in terms of the objective sought to be attained, we are convinced that the legislative intent was to include as an offense those emissions which, while not measurable by precise standards (and thus not falling within the provisions of §§ 6.1–6.4), nevertheless are injurious or actually endanger the public health or harm property. Given the multitude of emissions of varying types and the rapidity with which technology develops innovative processes and utilizes new compounds it becomes impossible to define in advance what may constitute an impermissible emission. Thus it is both rational and necessary to include in any code one general all-encompassing section. We believe this was the legislative intent in the case of § 6.5. Having made this determination, the question remains whether the language employed in § 6.5 is too inclusive or too vague. But before deciding this question,[3] we first turn to the issue of nuisance.

## II

The plaintiff claims that § 6.5 is merely a definition of a common-law criminal nuisance and thus cannot be impermissibly vague. We disagree because we believe the section purports to define conduct quite different and distinct from a common-law nuisance. Nuisance is not mentioned as such in 6.5a and there is no indication therein that it is directed at proscribing a common-law nuisance. Furthermore, subsection 6.5b states that nothing in subsection 6.5a should be construed as authorizing the maintenance of a nuisance. If 6.5a prohibited common-law nuisances, 6.5b would be

[3] *See* III, *infra.*

unnecessary. The fact that 6.5b was included is persuasive that 6.5a was intended to describe conduct different than a nuisance.

## III

This brings us to the crucial issue of vagueness. The law of this state and the United States on the question of statutory vagueness is summarized in the recent case of *People v Posner,* 79 Mich App 63, 71; 261 NW2d 209 (1977):

> "It has been held that a statute which either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Lanzetta v New Jersey,* 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939), *People v Herron,* 68 Mich App 381; 242 NW2d 584 (1976). The constitutional requirement of definiteness is followed in Michigan. *People v Austin,* 301 Mich 456; 3 NW2d 841 (1942), *People v Goulding,* 275 Mich 353; 266 NW 378 (1936), *People v Ellis,* 204 Mich 157; 169 NW 930 (1918). As found by the United States Supreme Court in *Giaccio v Pennsylvania,* 382 US 399, 402; 86 S Ct 518; 15 L Ed 2d 447 (1966):
>
> "'A law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.'"

See also, *People v Purifoy,* 34 Mich App 318, 320; 191 NW2d 63 (1971). Does § 6.5, when read together with the entire code of regulations, sufficiently inform potential defendants of what they may or may not do? The vague and cloudy words are "detrimental", "comfort", "to any person", and "manner". What is "detrimental" to the public? Is

an odor or other emission "detrimental" when it offends some but not all people? Must there be a provable and ascertainable injury or damage to property or is it sufficient to only prove that the "comfort" of any person is endangered? When is comfort endangered? Health authorities tell us that cigarette smoking endangers health. Certainly it disturbs the comfort of many people. Is this an offense under the regulation? What disturbs the comfort of some people or what some persons believe "endangers" their comfort or health is not disturbing to others.

This statutory opaqueness grows even more cloudy when we look to the definition section, Article I, § 1.3 of the regulations:

> "Air Contaminant: Any gaseous, liquid, or solid matter, which when present in the outdoor atmosphere *contributes to a condition of air pollution,* including, but not limited to dust, soot, mist, smoke, fumes, flyash, cinders, gases, vapors, aerosols, and odors.
>
> "Air Pollution: The presence in the outdoor atmosphere of one or more air contaminants or combinations thereof *in such quantities and of such duration* and characteristics which are *or may tend to be* injurious to human, plant, or animal life, or property, *or which interfere with the comfortable enjoyment of life or property or the conduct of business."* (Emphasis supplied.)

From the underscored portions of the definitions cited above it clearly appears that a violation may occur where the emissions are not actually injurious to health or property but merely "tend to be" or "which interfere with the comfortable enjoyment of life or property or the conduct of business". But as we have stated before, what interferes with some people's enjoyment does not interfere with others' enjoyment. Given these subjective

words, we cannot conclude that manufacturers can determine in advance what may or may not be criminally punishable. No one can be punished for doing an act prohibited by a statute unless an ordinary person can determine in advance what he or she may or may not do under that statute. *People v Goulding,* 275 Mich 353, 358; 266 NW 378 (1936). A second element in determining vagueness is whether those charged with administering the statute have adequate standards to guide them.

"A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v City of Rockford,* 408 US 104, 108–109; 92 S Ct 2294; 33 L Ed 2d 222 (1972).

Section 6.5 offers no reasonably precise standard to those charged with enforcing the regulation. Police, judges and juries are given nothing but their own subjective judgment as to what constitutes an odor or other emission which is "detrimental to any person" or "endangers * * * the comfort * * * of any person or the public". Contrary to plaintiff's claim that the regulation prohibits only a common-law nuisance or an emission which substantially harms the public health or property, the regulation is so inclusive that potential offenders may be in full compliance with §§ 6.1–6.4 but still be subject to criminal penalties based only on the perceptions of others as to what is detrimental to or endangers one's comfort. The precepts of criminal enactment do not permit such imprecision.

Environmental legislation is not exempt from the due process requirement of definiteness. In *Verona v Shalit,* 92 NJ Super 65; 222 A2d 145 (1966), challenge was made on the grounds of

vagueness to a local ordinance whose definitional terms closely parallel § 6.5 in the instant case.[4] The court first held the ordinance invalid as in conflict with the state air pollution act but then went on to declare the act invalid for vagueness, saying:

"[2] Section 6 is invalid for another reason, because it fails to inform those to whom it is addressed of a proscribed standard of conduct, so that men of common intelligence must necessarily guess at its meaning and differ as to its application.

\* \* \*

"In *City of Milwaukee v Milbrew*, 240 Wis 527, 3 NW2d 386, 141 ALR 277 (Sup Ct. 1942), in a somewhat similar situation, it is stated:

" 'To construe this ordinance as attempting to condemn as "offensive" any odor that is merely disagreeable to, or disliked by, an indefinite number of persons in a given neighborhood would render the legislation void as too vague and indefinite for enforcement, [citations] or would turn the question of the existence of a nuisance into a plebiscite of the neighborhood and amount to an unlawful delegation of authority [citations].' " 92 NJ Super at 69, 72; 222 A2d at 147, 149.

In defending § 6.5 against the charge of vagueness, plaintiff refers to cases from other jurisdictions which sustained air pollution ordinances. In particular, plaintiff cites three decisions which

---

[4] " 'The maintaining of anything whatsoever *which is a hazard or a danger* to human health, and the following specific acts, conditions or states are, each and every one, declared to be and constitute a nuisance.

\* \* \*

" 'The escape of any gas, fumes, smoke or other odors that *may be of a menace* to human life, or is by reason of *disagreeable or obnoxious odors* a source of physical distress to persons in the vicinity.' " (Emphasis supplied.) *Verona v Shalit, supra,* at 66–67; 222 A2d at 146.

specifically addressed the vagueness issue. *Southern Illinois Asphalt Co, Inc v Environmental Protection Agency,* 15 Ill App 3d 66; 303 NE2d 606 (1973), *Department of Health v Owens-Corning Fiberglas Corp,* 100 NJ Super 366; 242 A2d 21 (1968), *Air Pollution Commission v Coated Materials Co,* 1 Envir Rep 1444 (Pa Common Pleas, 1970). To these decisions we *sua sponte* add *City of Monmouth v Pollution Control Board,* 57 Ill 2d 482; 313 NE2d 161 (1974), *Lloyd A Fry Roofing Co v Pollution Control Board,* 20 Ill App 3d 301; 314 NE2d 350 (1974), *cert den* 420 US 996; 95 S Ct 1438; 43 L Ed 2d 679 (1975), and *Fleischmann Malting Co v Pollution Control Board,* 28 Ill App 3d 659; 329 NE2d 282 (1975). We find the cases distinguishable. All deal with a definition of air pollution rather than, as in the case before us, with a general prohibition. Each definition of air pollution is more restricted and limited than the instant regulation. The Illinois cases all relate to a definition of air pollution considerably less encompassing than § 6.5.[5] Under the Illinois statute the emission must "unreasonably" interfere with the enjoyment of property whereas under the instant regulation any detriment or endangerment to a single person's comfort, no matter how slight, is grounds for criminal prosecution. The same distinction appears in the definition at issue in *Owens-Corning Fiberglas Corp, supra.*[6] More relevant

---

[5] Section 3(b) of the Illinois Environmental Protection Act defines air pollution as "the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration to be injurious to human, plant, or animal life, to health, or to property, or to *unreasonably* interfere with the enjoyment of life or property". Ill Rev Stat 1971, ch 111 1/2, paragraph 1003(b). (Emphasis supplied.)

[6] Section 1.10 of the New Jersey Air Pollution Control Code defines air pollution as "the presence in the outdoor atmosphere of one or more air contaminants in such quantities and duration as are, or tend to be; injurious to human health or welfare, animal or plant life or

to the case at hand is *Milwaukee v Milbrew, Inc,* 240 Wis 527; 3 NW2d 386 (1942), where defendant, a manufacturer of yeast, was charged under a city ordinance making it a criminal offense for any business to "emit foul or offensive odors, gasses, effluvia or stenches, or which shall be dangerous or prejudicial to the public health". In reversing a conviction, the court said:

"The word 'offensive,' as defined in Webster's New International Dictionary (2d ed), means 'giving pain or unpleasant sensations,' 'revolting,' or 'obnoxious.' To construe this ordinance as attempting to condemn as 'offensive' any odor that is merely disagreeable to, or disliked by, an indefinite number of persons in a given neighborhood would render the legislation void as too vague and indefinite for enforcement. (citations omitted); or would turn the question of the existence of a nuisance into a plebiscite of the neighborhood and amount to an unlawful delegation of authority." *Id.* at 538.

See also *State v Hayes,* 17 Or App 79; 520 P2d 465 (1974), where the court struck down as impermissibly vague a statute which prohibited anyone to "set on fire or cause to be set on fire any combustible material" without first securing a permit.[7]

Our decision that § 6.5 is impermissibly vague, while embarrassing to plaintiff, is not crippling to the cause of environmental protection. Just recently the Air Pollution Control Division of the

property, or would *unreasonably* interfere with the enjoyment of life or property throughout the State". NJSA 26:2C-2. (Emphasis supplied.)

[7] "Under the statute one would be prohibited to light a fire in one's fireplace, to light a cigarette, start one's car, etc., without first obtaining a permit. A citizen could not tell what activity by him was, in fact, intended to be prohibited without first securing a permit. In terms of both its own language and of its legislative purpose, the statute is overbroad and standardless." *State v Hayes, supra* at 82–83.

Wayne County Department of Health secured a favorable decision from this Court under the Michigan Environmental Protection Act, MCLA 691.1201 *et seq.;* MSA 14.528(201) *et seq.,* directing Olsonite Corporation to adopt a supplemental odor control system designed to prevent the future emission of the identical odors for which Olsonite is charged under § 6.5 in the instant suit. *Wayne County Department of Health v Olsonite Corporation,* 79 Mich App 668; 263 NW2d 778 (1977).[8] The remedy provided in that suit is probably more effective than the penalties which were sought in the instant case.

However, we do not believe that suit under the Environmental Protection Act need be the exclusive remedy in future cases involving odor emission. At oral argument, plaintiff was asked whether § 6.3 prescribing definite standards as to sulphur oxide odors could not be expanded to include other odors. Counsel responded that while there were difficulties in so doing the division was working on and hoped to adopt a set of measurable odor standards. In this connection we note that the Federal government has adopted the United States EPA Odor Detection Chart.[9] Such a chart employs a numerical rating system designed to eliminate the ambiguity inherent in a narrative description or citizen-registered complaint of odor intensity. Addition of this or a similar chart to § 6.3 would eliminate much of the ambiguity in

---

[8] During the nine-day trial in the above mentioned case, testimony was given that the Air Pollution Control Division received 59 citizen complaints against Olsonite in 1973, 38 in 1974, 24 in 1975, and 13 as of August 31, 1976. Thirteen citizens testified the odors caused nausea, burning eyes, headaches and loss of sleep. In the instant case each count in the two complaints brought under § 6.5 alleged violations in July and August 1975.

[9] *Wayne County Department of Health v Olsonite, supra,* at 676, footnotes 3 and 4.

the present code and provide potential offenders with a specific standard. Finally, §§ 1.3 and 6.5 could be quickly and easily reworded so as to bring them within the definitional standards approved in *Southern Illinois Asphalt* and *Owens-Corning Fiberglas Corp, supra.* Such an amendment would be in the public interest and would prevent otherwise needless litigation.

Affirmed. No costs, a public question being involved.