PEOPLE v MOURADIAN

Docket No. 50534. Submitted June 4, 1981, at Detroit.—Decided
    November 2, 1981.

    Martin Mouradian was convicted of violating the Wayne County
    Air Pollution Control Regulation by failing to obtain a certifi-
    cate of operation for a rotary furnace and by failing to obtain
    an installation permit for another rotary furnace, Detroit Re-
    corder's Court, R. P. Van Wiemeersch, J. He appeals. *Held:*

    1. The record reveals that the trial court properly held that
    the defendant's furnaces were not entitled to exemption under
    the regulation.

    2. The provisions of the regulation are not unconstitutionally
    vague and are not violative of the defendant's due process
    rights.

    3. The defendant failed to meet his burden of showing that
    the regulation's classification scheme was irrational and thus
    violative of equal protection.

    4. The record reveals that the defendant's convictions were
    supported by the evidence.

    Affirmed.

1. CRIMINAL LAW — CRIMINAL PENALTIES — STATUTES — JUDICIAL
    CONSTRUCTION.

    A statute providing for criminal penalties is to be strictly con-
    strued, any doubts regarding whether a defendant's conduct
    constitutes that proscribed being resolved in his favor.

2. CONSTITUTIONAL LAW — DUE PROCESS — STATUTES.

    A statute which is so vague and standardless that it leaves the

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 591.
    73 Am Jur 2d, Statutes §§ 293-306.
[2] 16 Am Jur 2d, Constitutional Law §§ 219-225.
    16A Am Jur 2d, Constitutional Law § 818.
[3] 16A Am Jur 2d, Constitutional Law § 818.
    Validity of regulation of smoke and other air pollution. 78 ALR2d
    1305.
[4] 16A Am Jur 2d, Constitutional Law § 791.
    73 Am Jur 2d, Statutes § 43.

public uncertain as to the conduct proscribed or which leaves judges and jurors free to decide what is proscribed without any legally fixed standards fails to meet due process requirements.

3. Eɴᴠɪʀᴏɴᴍᴇɴᴛ — Aɪʀ Pᴏʟʟᴜᴛɪᴏɴ — Wᴀʏɴᴇ Cᴏᴜɴᴛʏ Aɪʀ Pᴏʟʟᴜᴛɪᴏɴ Cᴏɴᴛʀᴏʟ Rᴇɢᴜʟᴀᴛɪᴏɴ — Dᴜᴇ Pʀᴏᴄᴇss.

The proscription provided in the Wayne County Air Pollution Control Regulation against operating a rotary furnace without a permit is not so vague or standardless as to fail to give adequate notice of the conduct proscribed and does not fail to meet due process requirements.

4. Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ — Eǫᴜᴀʟ Pʀᴏᴛᴇᴄᴛɪᴏɴ — Sᴛᴀᴛᴜᴛᴇs — Bᴜʀᴅᴇɴ ᴏꜰ Pʀᴏᴏꜰ.

A party challenging the constitutionality of a classification as violative of equal protection rights has the burden of showing that the scheme challenged is irrational and that others similarly situated receive disparate treatment.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Donald Campbell* and *Joseph B. Klein,* Assistants Prosecuting Attorney, for the people.

*Walter A. Lucken,* for defendant.

Before: Bʀᴏɴsᴏɴ, P.J., and R. M. Mᴀʜᴇʀ and F. X. O'Bʀɪᴇɴ,* JJ.

Bʀᴏɴsᴏɴ, P.J. Defendant was convicted of two misdemeanor counts for violating the Wayne County Air Pollution Control Regulation (hereinafter the regulation).[1] The first conviction was based on defendant's failure to obtain a certificate of operation from the Wayne County Department of Health prior to running a rotary furnace in violation of § 4.10 of the regulation. The second convic-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The Wayne County regulations were promulgated pursuant to the authority of the Public Health Code. See MCL 333.2441; MSA 14.15(2441).

tion was based on defendant's installation of a second rotary furnace without obtaining an installation permit contrary to § 4.1 of the regulation. Defendant was fined $150 plus costs of $500 or 90 days in jail. He now appeals as of right.

The evidence introduced during trial showed that the charges arose out of the following factual scenario. Richard Dreger, a combustion equipment inspector employed by the Wayne County Department of Health, made an annual inspection of defendant's business in November, 1978. At this time, he observed a rotary furnace on the premises. Defendant identified himself as owner of Aetna Metals Company and stated that the furnace was to be moved to another location.

On July 20, 1979, Dreger returned to defendant's premises in response to a complaint concerning the emission of "smoky odors". He found two rotary furnaces. Next to one of the furnaces he discovered a "hot sow". A sow is a mold of metal poured from a furnace while the metal is in a molten state. The furnace itself was warm. At this time, defendant was cited for the violations of the regulation.

Defendant testified that the furnaces were used to test metal and, of secondary importance, to heat his plant. Although each furnace had a 3,000 to 3,500 pound capacity, defendant stated that he only placed 500 to 700 pounds in either at any given time.

Gerald Crowick, the supervisor of the Air Pollution Control Division, testified that rotary furnaces are generally used for reclamation of metals. He also testified that he had never known of this type of furnace being used for experimental purposes.

Other facts will be discussed where relevant to specific issues.

Defendant first argues that the trial court erred in finding the rotary furnaces not entitled to various of the regulation's exemptions. Defendant specifically contends that the following exemptions embodied in § 4.7 apply:

"e. Laboratory equipment used exclusively for chemical or physical analysis or experimentation.
"f. Equipment for inspection of metal products:

* * *

"h. All gas fuel and No. 1 and No. 2 fuel-oil-burning equipment used for space heating, service water heating, and electric power generation.

* * *

"n. Crucible furnaces, pot furnaces or induction furnaces, with a capacity of 1,000 pounds or less each, in which no sweating or distilling is conducted, nor any fluxing conducted utilizing free chlorine, chloride and flouride derivates and ammonium compounds, and from which only the following metals are poured or in which only the following metals are held in a molten state:

* * *

"3. Lead or any alloy containing over 50 per cent lead."

We start from the premise that in construing a statute providing for criminal penalties any doubts concerning whether defendant's conduct is contained within the prohibition of the act must be resolved in favor of the defendant. *People v Lyons,* 93 Mich App 35, 43; 285 NW2d 788 (1979), and cases cited therein.

Scrutiny of the exemptions claimed by defendant leads us to conclude, as did the trial court, that they are inapplicable to the furnaces in issue. Section 4.7e refers to laboratory equipment used exclusively for various types of analysis and experimentation. Assuming, *arguendo,* that the fur-

naces could be construed as laboratory equipment, by defendant's own admission the material placed into the equipment is subsequently formed into sow and resold. Consequently, the equipment was not used exclusively for analysis or experimentation. Section 4.7f also fails to apply to defendant's equipment because he was producing a product for sale, to wit: sow. Inspection is not the same as processing. The melting of the scrap metal to release contaminants and thereby create a marketable good is not the equivalent of inspection.

· Section 4.7h is inapplicable because the rotary furnaces were not used solely for space heating. If defendant's equipment could be construed as falling within the space heating exemption, any apparatus which incidentally gave off heat would also qualify. The testimony adduced at trial was that a rotary furnace's primary purpose is processing and production.

Finally, § 4.7n is inapplicable because the regulation only exempts certain types of furnaces with a capacity of less than 1,000 pounds. Even accepting defendant's testimony that he never processed more than 700 pounds of material at a time, the capacity of the furnaces still exceeded 1,000 pounds. Moreover, the exempted furnaces are stationary in their operation, while defendant's furnaces work by rotation.

Defendant also contends that the regulation is unconstitutionally vague. In *Giaccio v Pennsylvania,* 382 US 399, 402-403; 86 S Ct 518; 15 L Ed 2d 447, 450 (1966), the United States Supreme Court stated:

"It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free

to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. See, *e.g., Lanzetta v New Jersey,* 306 US 451; 59 S Ct 618 [83 L Ed 888 (1939)], *Baggett v Bullitt,* 377 US 360; 84 S Ct 1316 [12 L Ed 2d 377 (1964)]."

See, also, *People v Olsonite Corp,* 80 Mich App 763, 769-776; 265 NW2d 176 (1978), *lv den* 402 Mich 845 (1978), and cases cited therein.

Section 4.1 of the regulation provides that "any process, fuel-burning, refuse-burning, or control equipment" requires an installation permit. Section 4.10 of the regulation mandates a certificate of operation for that equipment requiring a permit of installation. Defendant contends that these provisions, by failing to specify "rotary furnaces", are unduly vague.

Section 1.3 of the regulation, however, defines process equipment as:

"Any equipment, device or contrivance for changing any materials whatever or for storage or handling of any materials, and all appurtenances thereto, including ducts, stacks, etc., the use of which may cause any discharge of an air contaminant into the outdoor atmosphere but not including that equipment specifically defined as fuel-burning equipment or refuse-burning equipment in this Regulation."

The record clearly shows that defendant uses his rotary furnaces to transform solid metals into a molten state. The testimony also shows that in this process, which purifies the metal, contaminants are released into the air. Thus, the Wayne County Department of Health was contacted by a nearby resident complaining of "smoky odors". The definition contained within § 1.3 of the regulation is such that a person of reasonable intelli-

gence would not have to guess that rotary furnaces like those used by defendant fall within its ambit.[2]

Defendant next attacks the regulation on the basis that it unconstitutionally deprives him of equal protection of the law. He contends that the exemptions in § 4.7 result in the creation of two classes of similarly situated persons who are treated differently. Defendant argues that one group is allowed to use polluting equipment with impunity and the other group is prosecuted for the use of equipment no more detrimental to the environment. The burden is on the party challenging the constitutionality of the classification. *Dandridge v Williams*, 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491, 502 (1970), *Manistee Bank & Trust Co v McGowan*, 394 Mich 655, 667; 232 NW2d 636 (1975).

In our opinion, defendant has not met his burden of showing that the classification scheme is irrational. Defendant offered no testimony that other industrial users of heavy duty process equipment are exempted from the regulation. Basically, the exemptions apply to various types of residentially used equipment, smaller industrial operations which do not pose a significant pollution problem, and equipment upon which it would be impractical to impose a permit requirement on a county-wide basis, *e.g.,* automobiles. By this opinion we do not hold that the regulation is definitely free from all constitutional problems based on an alleged denial of equal protection. Instead, we simply hold that defendant has failed to prove the

[2] Furthermore, the record as it currently exists strongly suggests that defendant was well aware of the fact that his rotary furnaces came within the scope of the regulation. Defendant specifically indicated to Richard Dreger during the November, 1978, inspection that the rotary furnace on the premises was going to be removed. In fact, it never was.

existence of a similarly situated group receiving different treatment than he. Many of the exemptions are highly technical in definition. We simply do not know to what extent each exempt group causes pollution and to what extent each exempt group could be practically regulated. We do know, however, that defendant has failed to show that his furnaces are no different than any group of exempt equipment.

Defendant finally argues that the verdict was against the great weight of the evidence. In large part, this argument is included within defendant's other assignments of error. We are not prepared to hold that the trial court's findings of fact are clearly erroneous. Rather, it appears from these findings that the convictions were adequately supported by the evidence. If defendant is really attacking the sufficiency of the evidence, we are convinced that there was ample evidence adduced to support the conclusion that defendant was guilty beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

Affirmed.